PEOPLE v MANN

1. CRIMINAL LAW—INTERROGATION—RIGHT TO COUNSEL—RIGHT OF
   SILENCE—ASSERTION OF RIGHT.
   The police may not question an accused if he indicates in any
   manner and at any stage of the interrogation process that he
   wishes to consult with an attorney before speaking or if the
   accused is alone and indicates in any manner that he does not
   wish to be interrogated.

2. CRIMINAL LAW—WARNING OF RIGHTS—INTERROGATION—RIGHT OF
   SILENCE—ASSERTION OF RIGHT.
   Once the police have given a person warning of his constitutional
   rights, if the accused indicates in any manner, at any time
   prior to or during questioning, that he wishes to remain silent,
   the interrogation must cease, because at this point the accused
   has shown that he intends to exercise his Fifth Amendment
   privilege and any statement taken after the accused invokes
   his privilege cannot be other than the product of compulsion,
   subtle or otherwise.

3. CRIMINAL LAW—INTERROGATION—GENERAL QUESTIONING.
   Asking an accused by police to reveal his name, address and age
   constitutes an interrogation; the general nature of the inquiries
   does not reduce them to a perfunctory status to which a
   response is expected but it constitutes an interrogation none-
   theless.

4. CRIMINAL LAW—INTERROGATION—RIGHT OF SILENCE—ASSERTION OF
   RIGHT.
   An accused who remains silent when asked by the police to

REFERENCES FOR POINTS IN HEADNOTES
[1, 4] 21 Am Jur 2d, Criminal Law § 314.
[2] 21 Am Jur 2d, Criminal Law § 317.
[3] 21 Am Jur 2d, Criminal Law § 530.
[5, 7] 21 Am Jur 2d, Criminal Law §§ 357–359, 362, 367.
[6] 21 Am Jur 2d, Criminal Law §§ 219, 317.
[8] 21 Am Jur 2d, Criminal Law §§ 219, 221.
[9] 21 Am Jur 2d, Criminal Law § 298.
[10] 21 Am Jur 2d, Criminal Law §§ 331, 339.
[11, 12] 53 Am Jur, Trial §§ 286, 796–802.

disclose his name, address, and age has not effectively invoked his privilege against self-incrimination because his silence cannot be presumed to communicate his right to remain silent.

5. CRIMINAL LAW—WARNING OF RIGHTS—RIGHT OF SILENCE—WAIVER.

An affirmative response by an accused that he understood his warning on constitutional rights given him by the police on its face constituted a waiver of his right against self-incrimination when he later answered questions.

6. CRIMINAL LAW—WAIVER OF RIGHTS—VALIDITY—QUESTION OF FACT.

The validity of an accused's waiver of one of his constitutional rights is a question of fact to be determined in each case.

7. CRIMINAL LAW—WARNING OF RIGHTS—INTERROGATION—WAIVER— EVIDENCE.

An accused, who was having heroin withdrawal symptoms at the time the police received answers to their questions after eliciting an affirmative response when they asked him if he understood the warnings on constitutional rights given him, understandingly and voluntarily waived these rights, and his statements were voluntarily made where the record does not reveal testimony suggesting that the defendant's physical and mental condition prevented him from voluntarily waiving his right against self-incrimination, or that defendant's statements were given in exchange for the promise of receiving a methadone treatment.

8. CRIMINAL LAW—COMPOSITION OF JURY—OBJECTIONS—PEREMPTORY CHALLENGE—WAIVER—DUE PROCESS.

A defendant's contention that he was denied due process because a petit jury array may have excluded an allegedly substantial class of the community is without merit, where no pretrial motions were requested before the jury was sought to be impaneled, the defendant expressed his satisfaction with those jurors impaneled, he did not request the allowed continuance so that the jury list could be corrected as provided in the statute dealing with jury selection procedure, and he did not exhaust his peremptory challenges; the defendant's expression of satisfaction with the jury waived any error (MCLA 600.1354).

9. CRIMINAL LAW—CLOSING ARGUMENTS—RECORDATION—WAIVER— PREJUDICE.

A trial court did not commit reversible error in failing to record the closing arguments of counsel where the record clearly indicates that defendant specifically waived recordation of the

closing arguments, and it is not alleged that any prejudicial statements or activity occurred during the closing arguments.

10. CRIMINAL LAW—WITNESSES—EVIDENCE—SUMMARY OF ORAL STATEMENTS—PRESENT MEMORY RECOLLECTED—IMPEACHMENT.

A prosecution witness was properly permitted to read to the jury from a summary compiled by him of a defendant's oral statements when after the witness testified from his present memory the defendant attempted to impeach the witness's memory, because the summary was used solely for the purpose of showing prior consistent statements rebutting an attack on the witness's recollection; the statement was not read to prove the truth or falsity of the matters recited, nor the truth or falsity of the witness's testimony, and as a method of demonstrating that no inconsistency existed, it was proper that both statements be carefully weighed by the jury.

11. CRIMINAL LAW—INSTRUCTIONS TO JURY—LESSER INCLUDED OFFENSES—EVIDENCE.

A reversal of a conviction because a judge did not instruct the jury on allegedly lesser included offenses is required only where there is no request for an instruction on lesser offenses, there is evidence on the record to support a conviction on a lesser offense so that, if requested, it would have been error to refuse to instruct on it, and the court affirmatively excludes the jury from considering lesser offenses.

12. CRIMINAL LAW—INSTRUCTIONS TO JURY—LESSER INCLUDED OFFENSES.

Instructions to a jury that a defendant was either guilty as charged or not guilty were proper in a trial for uttering and publishing where the defendant stated his satisfaction with the instructions, no evidence was introduced to support a lesser offense, and defendant's sole defense was that he was unaware that the check was false, forged, altered or counterfeited but his testimony confirmed the existence of all the other elements necessary for a conviction of the crime charged.

Appeal from Kalamazoo, Donald T. Anderson, J. Submitted Division 3 June 4, 1973, at Grand Rapids. (Docket No. 15440.) Decided September 24, 1973.

Robert Mann was convicted of uttering and publishing. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Donald A. Burge,* Prosecuting Attorney, and *Michael H. Dzialowski,* Assistant Prosecuting Attorney, for the people.

*Michael C. Moran,* Assistant State Appellate Defender, for defendant.

Before: R. B. Burns, P. J., and Fitzgerald and O'Hara,* JJ.

Fitzgerald, J. Defendant was convicted by a jury of uttering and publishing[1] and was sentenced to a prison term of 7 to 14 years. He appeals as of right.

On May 4, 1972, officers Yeakel and Farr of the Kalamazoo Township Police Department responded to a call from a Town & Country Market store clerk advising them that he had honored a personal check which he suspected to be forged. Defendant fled upon the arrival of the police and a foot-chase ensued. As Officer Yeakel gained ground, the defendant stopped, turned around and held a straight razor over his head. Yeakel drew his weapon and defendant dropped the razor. Defendant was arrested and advised of his *Miranda*[2] rights, electing to remain silent when asked his name, address and age.

He was then taken to the police station and advised of his *Miranda* rights a second time, again refusing to divulge his name. Officer Farr testified that defendant appeared fidgety and somewhat dazed. He had "watery eyes, he was sniffing, his

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] MCLA 750.249; MSA 28.446.

[2] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

nose was running, [and] he was nervous". Officer Yeakel then asked if he was a heroin addict and he admitted that he was. When asked if he was suffering from withdrawal symptoms, defendant answered affirmatively. Defendant indicated his last heroin injection had occurred approximately 12 hours earlier. Officer Yeakel then offered to obtain methadone for defendant, telephoned a local hospital, and arranged to present defendant for treatment within 30 minutes to an hour. The record indicates that 40 minutes to an hour and a half elapsed before defendant was taken to the hospital. During this period defendant was told that a source of methadone had been located. He was then given his *Miranda* rights for a third time. Defendant stated he knew each of the rights explained to him and agreed to answer questions, making several damaging admissions. He admitted to obtaining the check from someone other than the indicated drawer and cashing the check at the Town & Country Market. No written record of defendant's waiver of *Miranda* rights, nor of any questions, answers or statements by defendant were made at that time. Following these admissions, defendant was taken to the hospital where a methadone shot was administered. Subsequently, he was jailed.

At a *Walker* hearing held June 1, 1972, the judge concluded that defendant's statements were voluntarily made. The court indicated that it was proper for the officers to procure methadone for defendant, and found no irregularities in the interrogations made prior to their departure from the station house.

At trial, Mary Stockwell testified that bank checks belonging to her were forcibly taken a few days prior to defendant's arrest. The check was

written against her account, but she was not the maker, nor was any party authorized to write checks on her behalf.

Officer Farr testified that he made notes of defendant's responses and statements some four hours following the interrogation. He also stated that 13 days following the interrogation, he had prepared a summary of defendant's oral statements, excerpts of which were read to the jury over defense counsel's objection. Officer Farr refreshed his memory prior to trial by reviewing the notes he made shortly after the interrogation along with reports prepared by other officers. At that point, defendant's motion for a directed verdict on the ground that the prosecution had failed to establish defendant's intent to defraud was denied.

The defense consisted solely of defendant's own testimony. He stated he overheard a man attempting to cash the check in question by using defendant's name. Defendant grabbed the check, verified the fact that he was the payee, and later presented the check to the Town & Country Market. The storekeeper excused himself in order to purportedly determine the check's validity and phoned the police. Upon the arrival of Officers Farr and Yeakel, defendant fled. A chase ensued resulting in defendant's eventual apprehension.

We first decide whether damaging admissions made by defendant in response to police interrogations are admissible where defendant remained completely silent when asked on two prior occasions to identify himself. We must further determine the effect of the police officers' offer of methadone treatment to counteract heroin withdrawal symptoms upon the voluntariness of defendant's admissions. Defendant maintains it was

improper for the police to disregard his desire to remain silent by continuing to interrogate him. He argues that repeated requests that an in-custody defendant answer questions is inherently compulsive and violates his constitutional right against self-incrimination. The people contend that defendant was interrogated only once, and during that time defendant indicated that he understood all the rights that were given him and voluntarily agreed to answer questions posed by the interrogating officers.

*Miranda v Arizona,* 384 US 436; 444–445, 473–474; 86 S Ct 1602, 1612, 1627–1628; 16 L Ed 2d 694, 707, 723; 10 ALR3d 974, 993, 1011 (1966), sets forth the proper interrogation procedures to be followed:

"If [the accused] indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him.

\* \*· \*

"Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise."

Defendant remained absolutely silent when asked his name, address, and age at the time of his arrest and later at the police station. We do not agree with the people's contention that asking defendant to reveal his name, address and age

does not constitute an interrogation. The general nature of the inquiries does not reduce them to a perfunctory status to which a response is expected. It constitutes an interrogation nonetheless. Nor are we able to accept defendant's argument that by remaining silent when asked to disclose this basic information, he invoked his privilege against self-incrimination. While absolute silence may be argued as being an emphatic expression of defendant's right to remain silent, no assurance is given that defendant was aware of this right. The two attempts to identify the defendant by asking his name, address and age were not designed to intimidate or badger defendant, nor can his silence be presumed to communicate his right to remain silent. The first indication that defendant understood his rights was an affirmative response to the question, "Do you know each of these rights I have explained to you?", after which he agreed to answer some questions. Thus, no significance can be attached to the two prior occasions upon which the identity of defendant was sought.

In *People v King,* 34 Mich App 275; 191 NW2d 80 (1971), a conviction was sustained where defendant responded to questions regarding his involvement in a breaking and entering. Defendant initially indicated he did not wish to discuss the matter, but later he voluntarily relinquished his silence by providing the police with his name and other information, believing that this evidence would eventually be discovered by the police. This evidence, together with a signed confession, was admissible at trial, the majority holding that defendant was not a victim of trickery, coercion, maltreatment, or long detention. In the instant case, defendant's damaging statements were responses to questions rather than volunteered ad-

missions. This distinction is of little significance in view of the Court's statement at 279; 191 NW2d at 81:

"As I read *Miranda,* it prohibits the admission of neither volunteered information nor that given pursuant to an understanding and intelligent waiver."

Defendant's affirmative response that he understood the rights given him on its face constitutes a waiver of his right against self-incrimination. Whether this waiver was understandingly and voluntarily given is the subject of our next inquiry.

Did defendant's physical condition, together with the prospect of receiving methadone to counteract heroin withdrawal symptoms vitiate his waiver of right against self-incrimination? Defendant contends that the officers, while not creating the physical discomfort suffered by defendant, indirectly coerced the defendant to respond to questions since they controlled whether or not defendant would obtain relief by securing the methadone. The validity of a waiver is a question of fact to be determined in each case. *People v Matthews,* 22 Mich App 619; 178 NW2d 94 (1970). The record is barren of any testimony suggesting that defendant's physical and mental condition prevented him from voluntarily waiving his right against self-incrimination. The observations of defendant testified to by Officers Yeakel and Farr represent the only evidence of defendant's reaction to the drug withdrawal. Each stated that defendant understood the questions which were asked of him. Nor does the record reveal that defendant's statements were given in exchange for the promise of receiving a methadone treatment. We agree with the trial judge's ruling that nothing appeared in the

record to indicate that defendant was suffering from withdrawal symptoms to the degree that he would make statements involuntarily.

Defendant's contention that he was denied due process because the petit jury array may have excluded an allegedly substantial class of the community is without merit. No pretrial motions were requested before the jury was sought to be impaneled and the defendant expressed his satisfaction with those jurors impaneled. The procedure for selecting jury panels is provided in MCLA 600.1354; MSA 27A.1354 and is controlling. Defendant did not request the allowed continuance so that the jury list could be corrected as provided in the statute, nor did the defendant exhaust his peremptory challenges. Defendant's expression of satisfaction with the jury waived any error. *People v Tubbs,* 22 Mich App 549; 177 NW2d 622 (1970).

Defendant next argues that reversible error occurred by the trial court's failure to record the closing arguments of counsel. This argument is also without merit. The record clearly indicates that defendant specifically waived recordation of the closing arguments. Further, it is not alleged that any prejudicial statements or activity occurred during the closing arguments. Were this the case, defendant had available to him procedures for settling the record which he chose to ignore. GCR 1963, 705.

Reversible error is said to have resulted by permitting a police officer to read to the jury from a summary of defendant's oral statements compiled by him without a showing that he had no present recollection and without laying a foundation for the introduction of the summary itself. We agree with the people that defendant misinterprets the officer's statements and the purpose of their

introduction. Officers Farr and Yeakel both testified as to the previous admissions of the defendant without the assistance of the summary compiled by Officer Farr. Following cross-examination of Officer Farr regarding the summary content, and redirect by the people, the witness read the following statement from the summary:

"Mann stated he knew the check was bad but stated he thought he could get away with it."

On re-cross-examination it was revealed, as stated earlier, that the summary of the interrogation was made 13 days after the incident from Officer Farr's memory. Officer Farr testified from his present memory. The summary objected to was not brought before the jury until defendant initiated this line of interrogation by attempting to impeach Officer Farr's memory. The issue here is not whether or not he had present recollection, but rather whether Farr's recollection of defendant's admissions testified to in court was consistent with his recollection of defendant's specific admissions at the time the summary was compiled. The summary was used solely for the purpose of showing prior consistent statements rebutting an attack on Officer Farr's recollection. The statement was not read to prove the truth or falsity of the matters recited, nor the truth or falsity of Officer Farr's testimony. As a method of demonstrating that no inconsistency existed, it was proper that both statements be carefully weighed by the jury. Defendant opened the door by cross-examining the witness regarding the summary and he cannot now argue that reversible error occurred when the witness read from the summary to dispel any alleged inconsistencies between his testimony and the recorded summary. The trial judge correctly

ruled that the people were permitted to rehabilitate the testimony of Officer Farr since the defendant introduced a question concerning the accuracy of the witness's memory. Moreover, assuming *arguendo* that admission of the testimony in question was error, it was harmless beyond a reasonable doubt. *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972).

Finally, defendant urges that his conviction be reversed because the court did not instruct the jury on allegedly lesser included offenses of obtaining money under false pretenses, forgery, uttering forged notes, drawing a no-account check, or attempted uttering and publishing. Defendant stated his satisfaction with the jury instructions that their verdict shall be guilty or not guilty. Applying the rule of *People v Membres,* 34 Mich App 224; 191 NW2d 66 (1971), we conclude that reversal is not warranted. The *Membres* Court stated at p 232; 191 NW2d at p 69:

"that *Lemmons* [384 Mich 1; 178 NW2d 496 (1970)] requires a reversal only where: (1.) there is no request for an instruction on lesser offenses; (2.) there is evidence on the record to support a conviction on a lesser offense so that, if requested, it would have been error to refuse to instruct on it; and (3.) the court affirmatively excludes the jury from considering lesser offenses."

No evidence was introduced that defendant actually forged the check, or drew the check without having a bank account, both of which were specifically denied. Furthermore, none of the suggested alternatives are "included" but are in fact separate crimes. Defendant's sole defense is that he was unaware that the check was false, forged, altered, or counterfeited, claiming he gave it to the grocer inquiring whether or not it was valid. However, defendant's testimony confirmed the exis-

tence of all other elements necessary for a conviction of the crime charged. Thus, defendant was either guilty as charged or not guilty, and the jury was properly instructed. *People v Henry,* 44 Mich App 290; 205 NW2d 498 (1973).

Affirmed.

All concurred.