PEOPLE v HUNT

1. SEARCHES AND SEIZURES—CONSTITUTIONAL LAW—EXPECTATION OF PRIVACY.

There can be no unreasonable search within the meaning of the Fourth Amendment if a defendant does not have an expectation of privacy or if his expectation is unreasonable (US Const, Am IV).

2. SEARCHES AND SEIZURES—EXPECTATION OF PRIVACY—REASONABLE EXPECTATION.

No reasonable expectation of privacy existed where a defendant and his companion occupied a rest room at a gasoline station for more than 30 minutes, the door to the rest room was not locked, police were summoned by the station attendant and did not enter the rest room until well past the time the station was to have closed, and then did not enter immediately but only after they heard a moan and a thud.

3. ARREST—PROBABLE CAUSE FOR ARREST—SEARCHES AND SEIZURES— SEARCH INCIDENT TO ARREST.

A police officer had probable cause to arrest a defendant for possession of a controlled substance where upon legally entering a gasoline station rest room the officer saw blood spattered on the walls and running from the arms of the defendant and his companion and hypodermic needles, syringes and rubber straps lying on the floor; a search of the defendant's jacket, from which narcotics were seized, was justified as a search incident to the arrest.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 68 Am Jur 2d, Searches and Seizures §§ 2–6.
[3] 68 Am Jur 2d, Searches and Seizures §§ 37, 92, 93.
    Constitutionality of searching premises without search warrant as incident to valid arrest—Supreme Court cases. 23 L Ed 2d 966.
[4] 21 Am Jur 2d, Criminal Law § 219.
[5] 76 Am Jur 2d, Trial § 198.
[6] Propriety and effect of prosecuting attorney's argument to jury indicating his belief or knowledge as to guilt of accused. 50 ALR2d 766.

4. CRIMINAL LAW—DEFENDANT'S STATEMENTS—WAIVER OF RIGHTS—
   VOLUNTARY WAIVER.

   A trial court properly found that a defendant had made a
   voluntary statement after an intelligent and voluntary waiver
   of his rights, although the waiver and the statement were given
   to police shortly after the defendant had taken an injection of
   heroin, where the police testified that at the time of question-
   ing the defendant's condition had improved over his condition
   at the time he was arrested and that his answers were respon-
   sive and given without delay, and where the defendant testified
   that a person could function normally after taking a "fix".

5. CRIMINAL LAW—PROSECUTOR'S CONDUCT—PREJUDICE.

   Exposure to the jury by the prosecutor, during the prosecutor's
   examination of a defendant's companion, of a key case which
   had been taken from the defendant's jacket where neither the
   key case nor its contents were admitted into evidence, was not
   so prejudicial as to require that the defendant be given a new
   trial.

6. CRIMINAL LAW—PROSECUTOR'S STATEMENTS—PREJUDICE—CURATIVE
   INSTRUCTIONS.

   A defendant was not prejudiced by a prosecutor's statement
   during closing argument that heroin seized from the defendant
   was capable of being diluted and resold where the trial court
   instructed the jury that the statement was only the words of
   the prosecutor and that the jury should draw their own conclu-
   sions, and where there was evidence that the heroin could have
   been diluted and therefore the prosecutor's comment was a
   legitimate inference from the evidence.

Appeal from Saginaw, Eugene Snow Huff, J.
Submitted June 9, 1977, at Lansing. (Docket No.
29485.) Decided August 23, 1977.

James C. Hunt was convicted of possession of
heroin with intent to deliver. Defendant appeals.
Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *E. Brady Denton,*
Prosecuting Attorney, and *Kyle J. Higgs,* Assistant
Prosecuting Attorney, for the people.

*Thomas L. Frank,* for defendant on appeal.

Before: DANHOF, C. J., and T. M. BURNS and A. E. KEYES,* JJ.

T. M. BURNS, J. Defendant appeals his jury trial conviction of possession of heroin with intent to deliver, MCLA 335.341(1)(a); MSA 18.1070(41)(1)(a), which resulted in a sentence of 7 to 20 years in prison. Defendant claims the police entry into the public rest room which resulted in his arrest and the seizure of a quantity of heroin was illegal; that his waiver of *Miranda*[1] rights was invalid and therefore the inculpatory statements made shortly after his arrest should have been suppressed; and, that the conduct of the prosecutor during the course of trial and during closing argument deprived him of a fair trial. These contentions are rejected and the conviction affirmed.

The incident which resulted in this prosecution occurred in June of 1974 at a gas station in Saginaw County. Defendant and a female companion pulled into the station at approximately 11:45 p.m. Defendant purchased gas and his companion staggered into the rest room. Defendant parked his car after completing the gas purchase and joined his companion in the rest room. The station was scheduled to close at midnight.

When the pair had not left the grounds by 12:05 or 12:10, the person in charge of the station called the police. The attendant could hear water running continuously in the rest room, but called the police only because he could not close the station with the individuals still on the premises.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

Two Michigan State Police uniformed troopers responded to the call. After listening outside the rest room door for several minutes, the troopers heard a soft moan and a thud against the door. Trooper Miller, believing someone was sick or hurt, announced "State Police" as he opened the door. From his position in the doorway, the trooper could see evidence of recent narcotics use and arrested defendant and his companion.[2] A subsequent search of defendant's jacket led to the seizure of 6.3 grams of 10.5% pure heroin, upon which this prosecution is based.

I

The first issue raised requires that we determine if defendant had a reasonable expectation of privacy in the public rest room under the circumstances presented by this case. If defendant did not have an expectation of privacy or if his expectation was unreasonable, there was no search within the meaning of the Fourth Amendment.[3] *People v Whalen*, 390 Mich 672; 213 NW2d 116 (1973); *People v Abdalla*, 70 Mich App 697; 247 NW2d 332 (1976), *lv den*, 399 Mich 876 (1977).

We hold there was no reasonable expectation of privacy. The door to the rest room was not locked. Both defendant and his female companion had occupied the rest room for more than 30 minutes. The time at which the trooper entered the rest room was well past the time the station was scheduled to have closed. When summoned by the attendant, the officers did not enter immediately, but listened outside the door and did not enter

---

[2] Defendant and his companion were arrested at the scene for possession of a controlled substance. MCLA 335.341(4); MSA 18.1070(41)(4).

[3] US Const, Am IV.

until a moan and thud were heard. The intrusion may have been unwelcomed, but it was not illegal.

The same conclusion was reached by the Maryland Court of Appeals on substantially the same facts. We adopt the reasoning stated in *Kirsch v State,* 10 Md App 565, 568–569; 271 A2d 770, 772 (1970).

"That there may be circumstances, as in *Brown, [Brown v State,* 3 Md App 90; 238 A2d 147 (1968)], where a person is afforded Fourth Amendment protection from unwarranted governmental intrusion into *particular areas* within a public rest room, does not mean that an individual who may intend to avail himself of exclusive occupancy of the whole of such a public facility is thereby constitutionally insulated for as long as he wishes from unwelcome scrutiny of his actions. See *Bielicki v Superior Court,* [57 Cal 2d 602; 21 Cal Rptr 552] 371 P2d 288 [1962]; *Britt v Superior Court,* [58 Cal 2d 469; 24 Cal Rptr 849] 374 P2d 817 [1962]; *State v Bryant,* [287 Minn 205] 177 NW2d 800 [1970], and cases cited therein. Compare *Smayda v United States,* 352 F2d 251 (CA 9 [1966]), *cert. den.* 382 US 981, [86 S Ct 555; 15 L Ed 2d 471 (1966)]; *Mitchell v State,* [120 Ga App 447] 170 SE2d 765 [1969]. Assuming it is not unreasonable for a person given the key to a rest room in a gas station to expect a measure of privacy therein, that expectation of privacy is necessarily limited to that which is justifiable and reasonable; and what that encompasses depends upon and is controlled by the circumstances of each case. At best, the expectation of privacy in a free rest room facility, or any part of it, which is intended to be accessible for public use cannot be other than temporary. And where, as in the present case, the facility was plainly designed to permit multiple usage by members of the public who might be granted admittance thereto by keys controlled by the proprietor, no reasonable person would be justified in expecting absolute privacy in, or exclusive use of, the whole of such a facility, particularly where the length of such occupancy and use far exceeded, as here, normally permissible limits. *Cf. Mancusi v DeForte,*

[392 US 364; 88 S Ct 2120; 20 L Ed 2d 1154 (1968)].
Without question, after the three men had been using
the rest room for thirty minutes, the attendant had the
right to enlist the aid and assistance of a police officer
to determine their fate. That in such circumstances the
officer should simply unlock the door and enter can
hardly be condemned as an unwarranted governmental
intrusion, or characterized as lawless police conduct.
Indeed, it does not appear from the record that the
officer intended to conduct a 'search' in the constitu-
tional sense *(see St Clair v State,* 1 Md App 605 [232
A2d 565 (1967)]); rather, it is suggested that entry was
made out of concern for the physical well-being of the
men *(see Davis v State,* 236 Md 389 [204 A2d 76 (1964)].
But as 'there is no war between the Constitution and
common sense,' *Mapp v Ohio,* 367 US 643, 657 [81 S Ct
1684, 1693; 6 L Ed 2d 1081 (1961)], we hold, without
regard to the officer's motivation in entering the rest
room, that he violated no constitutionally protected
right of appellant to privacy under the Fourth Amend-
ment. *Cf. Stoner v California,* 376 US 483 [84 S Ct 889;
11 L Ed 2d 856 (1964)]."

Once the legal entry was made, the trooper had
probable cause to arrest defendant. The trooper
could see blood spattered on the walls and running
from the arms of defendant and his companion.
Hypodermic needles, syringes and rubber straps
were lying on the floor. The trooper reasonably
concluded that this was evidence of recent narcot-
ics use. The seizure of the narcotics from defend-
ant's jacket, which was hanging on the door of the
rest room, was justified as a search incident to
arrest. *People v Hall,* 57 Mich App 553; 226 NW2d
562 (1975).

## II

Defendant also contends that his statement
given to the troopers in the police car after receiv-

ing *Miranda* warnings should have been suppressed because the hysteria of his companion and his own heroin use prevented him from voluntarily waiving those rights. The trial court, after a *Walker* hearing,[4] determined defendant's statements were voluntarily made after an intelligent waiver of his rights.

An independent review of the record shows the trial court's determination to be correct. The troopers testified that defendant's condition had improved substantially by the time he was questioned in the police car. Defendant indicated to the troopers that he had been through this before, did not want an attorney and that he would talk to the troopers. His answers to the troopers' questions were responsive and given without delay. At the *Walker* hearing, defendant told the trial court, "you could function normal" after taking a "fix". The trial court was correct in its determination that neither defendant's physical nor mental condition prevented his waiver of rights from being voluntary. *People v Mann,* 49 Mich App 454; 212 NW2d 282 (1973); *People v Cutler,* 73 Mich App 313; 251 NW2d 303 (1977).

## III

Defendant's final contention is that misconduct on the part of the prosecutor denied him a fair trial. The prosecuting attorney exposed a key case to the jury during his examination of defendant's companion. The key case had been taken from defendant's jacket. Neither the key case nor its contents were admitted into evidence. Although improper, the display was not so prejudicial as to

---

[4] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

require the defendant be given a new trial. *People v Miller,* 28 Mich App 161; 184 NW2d 286 (1970), *lv den,* 384 Mich 800, 826 (1971).

During closing argument, the prosecutor stated that the heroin seized from defendant's jacket was capable of being "stepped on" or diluted and re-sold. Defense counsel objected, believing there was not any testimony on this point. The trial court instructed the jury that these were only the prosecutor's words and they would be required to draw their own conclusions.

The trial court's instruction was sufficient to cure any possible prejudice. There was testimony at trial concerning the relative strength of "street" heroin in various areas of the state from the crime laboratory expert and a Michigan State Police trooper. It appears from the evidence that the heroin seized in this case could have been diluted further. The prosecutor's comment was a legitimate inference from the evidence. *People v Gould,* 61 Mich App 614, 625; 233 NW2d 109 (1975).

Affirmed.