PEOPLE v ABATE

Docket No. 52381. Submitted January 21, 1981, at Detroit.—Decided
April 9, 1981. Leave to appeal applied for.

Michael D. Abate was charged with violation of the statute
prohibiting the installation or maintenance of devices designed
for secret observation of persons in private places in the Ma-
comb Circuit Court. The information resulted from the defen-
dant's installation of two "two-way" mirrors over the women's
restroom of defendant's roller skating rink. Defendant admitted
installing the mirrors to guard against vandalism. At the
preliminary examination, defendant testified that similar mir-
rors were used in the men's restroom and that female employ-
ees observed the women's restroom and male employees ob-
served the men's restroom. In the women's restroom, one of the
mirrors was located above the "common" part of the restroom,
that part containing sinks, real mirrors, etc. The mirror which
the examining judge found as evidence of the violation was
located directly above one of the three stalls in the restroom.
An observer behind the two-way mirror could view the activi-
ties in all three stalls. Each stall was constructed in a normal
fashion for public restrooms. The back of the stall was the
room wall, two partitions were sides and the door could be
latched. The door and one or more of the sides of each stall
extended from about 14 inches off the ground, to a point where
a person of average height could not readily see over the top.
The complaining witness stated that someone could "pull them-
selves up on the partition" and look in, or stand on the toilet
bowl in the adjoining stall and peer over the partition. Small
gaps between the door and partition might also allow a person
putting their eye near the crack to see inside. The trial court,

REFERENCES FOR POINTS IN HEADNOTES
[1] 62 Am Jur 2d, Privacy §§ 26, 41.
    73 Am Jur 2d, Statutes § 195.
    Eavesdropping as violating right of privacy. 11 ALR3d 1296.
    Investigations and surveillance, shadowing and trailing, as violation
        of right of privacy. 13 ALR3d 1025.
[2] 29 Am Jur 2d, Evidence §§ 9-11.
    62 Am Jur 2d, Privacy §§ 26, 41.

Edward J. Gallagher, J., denied defendant's motion to quash and defendant appeals by leave granted. *Held:*

1. The stalls constituted a "private place" protected by the statute.

2. The statute is not unconstitutionally vague.

3. The statutory presumption that proof of installation in a private place of any device which may be used for the purpose of observing persons in a private place is prima facie evidence of a violation of the statute prohibiting such observation has a rational connection between the fact proved and the fact presumed and does not violate due process.

Affirmed.

1. PRIVACY — STATUTES.

The statute prohibiting the installation or maintenance of devices designed for secret observations of persons in "private places" is not impermissibly vague (MCL 750.539d; MSA 28.807[4]).

2. PRIVACY — STATUTES — DUE PROCESS.

The statutory presumption that proof of installation in a private place of any device which may be used for the purpose of observing persons in a private place is prima facie evidence of a violation of the statute; prohibiting such obervation has a rational connection between the fact proved and the fact presumed and does not violate due process (MCL 750.539d, 750.539i; MSA 28.807[4], 28.807[9]).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George N. Parris,* Prosecuting Attorney, and *Edward V. Boggs,* Assistant Prosecuting Attorney, for the people.

*Kramer & Murray, P.C.,* for defendant.

Before: N. J. KAUFMAN, P.J., and M. J. KELLY and CYNAR, JJ.

M. J. KELLY, J. Defendant-appellant, Michael Dante Abate, appeals by leave granted a decision of the trial court denying his motion to quash an information charging him with a violation of MCL 750.539d; MSA 28.807(4). The statute prohibits the installation or maintenance of devices designed for

secret observations of persons in private places. The defendant raises three issues.

The disputed information resulted from the defendant's installation of two "two-way" mirrors over the women's restroom of defendant's roller skating rink. Defendant admitted installing the mirrors, allegedly to guard against vandalism. At the preliminary examination, defendant testified that similar mirrors were used in the men's restroom and that female employees observed the women's restroom and male employees observed the men's restroom. In the women's restroom, one of the mirrors was located above the "common" part of the restroom, that part containing sinks, real mirrors, etc. The mirror which the examining judge found as evidence of the violation was located directly above one of the three stalls in the restroom. Apparently, an observer behind the two-way mirror could view the activities in all three stalls. Each stall was constructed in a normal fashion for public restrooms. The back of the stall was the room wall, two partitions were sides and the door could be latched. The door and one or more of the sides of each stall extended from about 14 inches off the ground, to a point where a person of average height could not readily see over the top. The complaining witness stated that someone could "pull themselves up on the partition" and look in, or stand on the toilet bowl in the adjoining stall and peer over the partition. Small gaps (described as "hairline cracks" by the complaining witness) between the door and partition might also allow a person putting their eye near the crack to see inside.

The defendant first alleges that MCL 750.539d; MSA 28.807(4) does not prohibit the installation of observation devices like those herein. The statute provides:

"Any person who installs in any private place, without the consent of the person or persons entitled to privacy there, any device for observing, photographing, or eavesdropping upon the sounds or events in such place, or uses any such unauthorized installation, is guilty of a felony punishable by imprisonment in a state prison for not more than 2 years or by a fine of not more than $2,000.00, or both."

Defendant admits installing the viewing device, but claims that the stall of his public restroom was not a "private place" within the meaning of the statute. The Legislature defined "private place" for the purposes of the statute:

"As used in § 539a to 539i:
" 'Private place' means a place where one may reasonably expect to be safe from casual or hostile intrusion or surveillance but does not include a place to which the public or substantial group of the public has access." MCL 750.539a(1); MSA 28.807(1)(1).

Thus, to qualify as a private place protected from surreptitious visual entry, the area must be one in which a reasonable person would expect not to be disturbed by the appearance of another person or be subject to surveillance. The area also must not be one to which the general public has access. We address each of the three factors relating to the statutory definitions:

I

A. *"Safe from casual or hostile intrusion"*.
This statutory language has not been interpreted by Michigan courts. However, in *Rakas v Illinois*, 439 US 128; 99 S Ct 421; 58 L Ed 2d 387 (1978), the Supreme Court discussed the related area of expectations of privacy against intrusions by the government:

"Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society. One of the main rights attaching to property is the right to exclude others, see W. Blackstone, Commentaries, Book 2, ch 1, and one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude." *Rakas v Illinois, supra,* 143, fn 12.

See also *Katz v United States,* 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967). The *Rakas* Court further did not exclude other bases to establish legitimate expectations of privacy.

In our view, an expectation of safety from casual or hostile intrusions, in the above statute, arises in much the same situations as does an expectation of privacy protected under the Fourth Amendment. US Const, Am IV. Thus, in the instant case, the complaining witness's limited ability to exclude others from the partially enclosed toilet stall during the time in which it was occupied would indicate some expectation of safety from intrusion. Testimony at the preliminary examination revealed that an occupant of the toilet stall could be viewed by someone who got on the floor and peered under the door or partition, stood on the toilet bowl in the adjoining stall or put their eye up to the "hairline cracks" between the door and partitions. These methods of intruding on the occupant's privacy might be fairly characterized as "hostile intrusions", but certainly not as "casual intrusions". The design of the stall is specifically intended to keep an occupant free from casual intrusions. As such, the stall in question, when closed and locked, would meet this first statutory requirement of finding a "private place".

B. *"Safe from * * * surveillance"*.

The definition of surveillance is also provided by statute. MCL 750.539a(3); MSA 28.807(1)(3) states:

> " 'Surveillance' means to secretly observe the activities of another person for the purpose of spying upon and invading the privacy of the person observed."

We have already concluded that a user of the stalls in defendant's ladies' room has a reasonable expectation that casual intrusions will not occur. While this expectation does not extend to all possible intrusions, we believe that a person using defendant's facilities may reasonably expect to be protected from secret observations during the period of the stall's use.

C. *"Not * * * a place to which the public or a substantial group of the public has access"*.

The word "access" has been defined as the "ability or permission to approach, enter, speak with, or use; admittance". The Random House Dictionary (unabridged ed), p 8. The testimony below indicated that once a person enters the public restroom stall and closes and latches the door, any "access" which the public might have had is cut off. Under this interpretation, the enclosed stall is again a private place under the statute, during the period in which it is used.[1]

---

[1] This interpretation is analogous to an interpretation of the privacy right of the user of a public telephone booth made in a concurring opinion by Justice Harlan in *Katz, supra,* 361:

"The critical fact in this case is that '[o]ne who occupies it, [a telephone booth] shuts the door behind him, and pays the toll that permits him to place a call is surely entitled to assume' that his conversation is not being intercepted. *Ante,* at 352. The point is not that the booth is 'accessible to the public' at other times, *ante,* at 351, but that it is a temporarily private place whose momentary occupants' expectations of freedom from intrusion are recognized as reasonable."

This analysis, in which Harlan set forth for the first time the

In *People v Hunt,* 77 Mich App 590; 259 NW2d 147 (1977), this Court addressed a case bearing some factual similarity to the instant case. In *Hunt,* the Court discussed the defendant's claim of a reasonable expectation of privacy in a gas station restroom. The restroom was occupied by the defendant and a companion for about 30 minutes when, after being called by the station proprietor, police entered and found the defendant using heroin. The Court adopted the rationale expressed in *Kirsch v State,* 10 Md App 565, 568-569; 271 A2d 770, 772 (1970):

"That there may be circumstances, as in *Brown [v State,* 3 Md App 90; 238 A2d 147 (1968)], where a person is afforded Fourth Amendment protection from unwarranted governmental intrusion into *particular areas* within a public rest room, does not mean that an individual who may intend to avail himself of exclusive occupancy of the whole of such a public facility is thereby constitutionally insulated for as long as he wishes from unwelcome scrutiny of his actions. See *Bielicki v Superior Court* [57 Cal 2d 602; 21 Cal Rptr 552] 371 P2d 288 [1962]; *Britt v Superior Court* [58 Cal 2d 469; 24 Cal Rptr 849] 374 P2d 817 [1962]; *State v Bryant* [287 Minn 205] 177 NW2d 800 [1970], and cases cited therein. Compare *Smayda v United States,* 352 F2d 251 (CA 9 [1966]), *cert den* 382 US 981 [86 S Ct 555; 15 L Ed 2d 471 (1966)]; *Mitchell v State* [120 Ga App 447] 170 SE2d 765 [1969]. Assuming it not unreasonable for a person given the key to a rest room in a gas station to expect a measure of privacy therein, that expectation of privacy is necessarily limited to that which is justifiable and reasonable; and what that encompasses depends upon and is controlled by the

"reasonable expectation of privacy" test, is now a touchstone of Fourth Amendment law. The *Katz* opinion was published after the enactment of the statute under consideration. Thus, a reasonable interpretation of the language used by the Legislature supports the inclusion of occupied stalls in public restrooms within the definition of "private place".

circumstances of each case. At best, the expectation of privacy in a free rest room facility, or any part of it, which is intended to be accessible for public use cannot be other than temporary. And where, as in the present case, the facility was plainly designed to permit multiple usage by members of the public who might be granted admittance thereto by keys controlled by the proprietor, no reasonable person would be justified in expecting absolute privacy in, or exclusive use of, the whole of such a facility, particularly where the length of such occupancy and use far exceeded, as here, normally permissible limits. *Cf. Mancusi v DeForte* [392 US 364; 88 S Ct 2120; 20 L Ed 2d 1154 (1968)]. Without question, after the three men had been using the rest room for thirty minutes, the attendant had the right to enlist the aid and assistance of a police officer to determine their fate. That in such circumstances the officer should simply unlock the door and enter can hardly be condemned as an unwarranted governmental intrusion, or characterized as lawless police conduct. Indeed, it does not appear from the record that the officer intended to conduct a 'search' in the constitutional sense (see *St Clair v State,* 1 Md App 605 [232 A2d 565 (1967)]); rather, it is suggested that entry was made out of concern for the physical well-being of the men (see *Davis v State,* 236 Md 389 [204 A2d 76 (1964)]. But as 'there is no war between the Constitution and common sense,' *Mapp v Ohio,* 367 US 643, 657 [81 S Ct 1684; 6 L Ed 2d 1081 (1961)], we hold, without regard to the officer's motivation in entering the rest room, that he violated no constitutionally protected right of appellant to privacy under the Fourth Amendment, *Cf. Stoner v California,* 376 US 483 [84 S Ct 889; 11 L Ed 2d 856 (1964)]."

The cases cited by the Maryland court, at a minimum, hold that a limited right of privacy may be reasonably expected by one using a locked public restroom. Additionally, the exigent circumstances found to permit legal entry by the *Hunt* Court (*i.e.,* excessive time in the facility even after closing hours, the fact that the police did not enter

until a moan and thud were heard inside the facility) are not present herein. The defendant's surveillance thus constituted a continuous infringement on the complainant's expectation of safety from intrusion in the stall. To the extent that the complainant could reasonably expect to be free from the view of others for the limited time during which the stall was used, the stall constituted a "private place" under MCL 750.539a(1); MSA 28.807(1)(1).

II

The defendant next alleges that the statute defining "private place" is impermissibly vague and would thus deny the defendant his right to due process of law. US Const, Am XIV, Const 1963, art 1, § 17. We disagree. The United States Supreme Court has consistently held that a criminal statute will be found violative of due process if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden". *United States v Batchelder,* 442 US 114, 123; 99 S Ct 2198; 60 L Ed 2d 755 (1979), citing *United States v Harriss,* 347 US 612, 617; 74 S Ct 808; 98 L Ed 989 (1954). See also *People v Taylor,* 89 Mich App 238, 242; 280 NW2d 500 (1979) ("A statute will not be struck down for vagueness where the language, although not mathematically precise, does delineate with reasonable certainty the proscribed conduct"). Additionally, the requisite certainty may be supplied by reference to materials outside the statutory definition of the offense or by reading the remainder of the statute itself. *People v Taylor, supra, Kalita v Detroit,* 57 Mich App 696, 701; 226 NW2d 699 (1975). Application of these standards leads us to the conclusion that the

statutory definition of "private place", while not mathematically precise, is sufficiently exact to apprise persons of the scope of prohibited conduct.

## III

The defendant's final allegation of error assails as violative of due process the statutory presumption of MCL 750.539i; MSA 28.807(9):

"In any criminal or civil action, proof of the installation in any private place of any device which may be used for the purposes of violating the provisions of this act shall be prima facie evidence of a violation of § 539d."

In order to withstand this constitutional attack, the statute above must exhibit a rationasl connection between the fact proved and the ultimate fact presumed. *People v Kayne,* 286 Mich 571, 581-585; 282 NW2d 248 (1938), *People v Bankston,* 78 Mich App 733; 261 NW2d 39 (1977). See also *People v Gallagher,* 404 Mich 429, 437-438; 273 NW2d 440 (1979).

Our review of the disputed provision indicates a rational connection between the proven facts and presumed prima facie evidence. The presence of secretive viewing devices is not a common occurrence and it is unlikely that the owner of a building or other private area would be unaware of its presence or use. There being a rational connection that proof of the installation of such surveillance device is evidence that the premises owner installed or used it, the statute is not constitutionally defective.

Affirmed.