PEOPLE v DEZEK; PEOPLE v MEDEMA; PEOPLE v THOMPSON; PEOPLE v PETRUSKA; PEOPLE v KELLY; PEOPLE v PLETCHER

Docket Nos. 47342, 48011, 48128, 49827, 50685, 50700. Submitted November 4, 1980, at Grand Rapids.—Decided June 4, 1981.

These cases arose out of a police electronic surveillance of a public rest room at a highway rest area pursuant to a search warrant. As a result of evidence obtained during the surveillance, John G. Dezek, Robert E. Medema, Harold Thompson, Michael D. Petruska, Jr., Lester G. Kelly, and Gifford H. Pletcher were separately charged with gross indecency between males. Each defendant moved in Kalamazoo Circuit Court to suppress the evidence obtained as a result of the surveillance. Dezek's motion was granted, Donald T. Anderson, J., holding that there was no statutory authority to issue the warrant and that Dezek was not served with a copy of the warrant. Medema's motion was granted, Charles H. Mullen, J., holding that Medema had a reasonable expectation of privacy in the place searched, that there was no probable cause to issue the warrant, and that the warrant was not sufficiently particular. Thompson's motion was denied, Robert L. Borsos, J., holding that Thompson had no reasonable expectation of privacy in the place searched. Petruska's, Kelly's and Pletcher's motions were denied, Patrick H. McCauley, J., holding in each case that, even though defendants had a reasonable expectation of privacy in the place searched, the warrant was valid. The people appeal in *Dezek* and *Medema,* and *Thompson,* Petruska, Kelly, and

References for Points in Headnotes

[1, 2] 62 Am Jur 2d, Privacy §§ 4, 26.

68 Am Jur 2d, Searches and Seizures §§ 2, 4.

[2] 68 Am Jur 2d, Searches and Seizures § 21.

[3] 68 Am Jur 2d, Searches and Seizures § 65.

Propriety of considering hearsay or other incompetent evidence in establishing probable cause for issuance of search warrant. 10 ALR3d 359.

[4] 68 Am Jur 2d, Searches and Seizures §§ 24, 84.

[5] 29 Am Jur 2d, Evidence §§ 415, 416.

Modern status of rule governing admissibility of evidence obtained by unlawful search and seizure. 50 ALR2d 531.

Pletcher appeal by leave granted. The cases were consolidated on appeal by the Court of Appeals. *Held:*

1. Defendants had a reasonable expectation of privacy in the rest room stalls, the place searched.

2. The warrant issued by the district judge was based on affidavits which contained hearsay information but which did not contain a basis for the informant's conclusion nor anything from which the credibility of the informant or the accuracy of his information could be inferred.

3. The warrant did not properly limit the scope of the searches. The searches as conducted by police and as authorized by the warrant were illegal.

4. The evidence obtained as a result of the searches is inadmissible.

5. Defendant Petruska's claim that his confession should be suppressed cannot be decided on appeal because the evidence on record is insufficient to determine whether the connection between the illegal conduct of police and the confession was attenuated. Defendant may raise the issue on remand.

The decisions in *Dezek* and *Medema* are affirmed. The decisions in *Thompson, Petruska, Kelly,* and *Pletcher* are reversed and remanded.

1. SEARCHES AND SEIZURES — SCOPE OF CONSTITUTIONAL PROTECTION.

The right to be secure against unreasonable searches and seizures pertains to people, not places; what is exposed to the public, even in a home or office, is not subject to such protection, but that in which a person has exhibited an actual, subjective expectation of privacy which society recognizes as reasonable, even in an area accessible to the public, may be so protected (US Const, Am IV).

2. SEARCHES AND SEIZURES — TEMPORARILY PRIVATE PLACES — CONSTITUTIONAL PROTECTION.

A temporarily private place, such as a telephone booth or a stall in a public rest room, provides a momentary occupant with a reasonable expectation of privacy, albeit partial and incomplete, which is entitled to protection against unreasonable searches and seizures (US Const, Am IV).

3. SEARCHES AND SEIZURES — SEARCH WARRANTS.

Affidavits which support a request by police for the issuance of a search warrant may be based on hearsay information and need not reflect the direct, personal observations of the affiant, but the magistrate before whom the request is made must be

informed of some of the underlying circumstances on which the informant based his conclusions and some of the underlying circumstances from which the affiant concluded that the informant, whose identity need not be disclosed, was credible or that the information was accurate.

4. SEARCHES AND SEIZURES — SEARCH WARRANTS.

A search warrant which authorizes electronic surveillance must limit any search to precise and discriminate circumstances, and a warrant may not authorize a search of all individuals found in a location suspected of being the scene of criminal activity where the location is a public place.

5. SEARCHES AND SEIZURES — ILLEGAL SEARCHES — EVIDENCE.

Evidence which is the product of an illegal search is inadmissible unless the connection between the illegal conduct of the searcher and the discovery of the evidence is so attenuated as to dissipate the taint.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James J. Gregart,* Prosecuting Attorney,. and *Stephen M. Wheeler,* Principal Appellate Attorney, for the people in *Dezek* and *Medema,* and. *Michael H. Dzialowski,* Principal Appellate Attorney, for the people in *Thompson, Petruska, Kelly,* and *Pletcher.*

*Stephen W. Burness* and *James T. Brignall,* for defendant Dezek.

*Walsh & Miller, P.C.,* for defendant Medema.

*DeVries & Lamb, P.C.,* for defendant Thompson.

*Hess & Leoks, P.C.* (by *William R. Farley),* for defendant Petruska.

*William R. Oudsema,* for defendant Kelly.

*Franklin W. Schmiege,* for defendant Pletcher.

Before: D. E. Holbrook, Jr., P.J., and V. J.
Brennan and R. C. Hotchkiss,* JJ.

Per Curiam. These consolidated cases arise out
of police electronic surveillance of a men's rest
room at a highway rest area. The surveillance was
conducted pursuant to a search warrant which
contained the following authorizations:

"A. Beginning at *October 25, 1978 at 10:00 P.M.* the
visual and audio communications may be recorded as
described herein.

"B. Communications between unknown males which
are expected to be in the nature of solicitations for
sexual activity. Further, any and all sexual activities
performed between the males in the mens room of the
next area located at the rest area on US-131 south of
'D' Avenue in Alamo Township, Kalamazoo County.

"C. Said conversations may include the statements of
other persons present at the same time and place.

"D. Recording of these acts and conversations will be
accomplished by the use of video and audio equipment
located in the mens room at the rest area previously
described in Section B.

"E. Said recordings shall terminate on November 1,
1978 at 11:59 P.M."

As a result of the surveillance, some 40 persons
including these six defendants were arrested and
charged with gross indecency between males, MCL
750.338; MSA 28.570. Each defendant herein
moved to suppress the evidence obtained through
the surveillance. In *Medema,* the circuit judge
suppressed the evidence after holding that defen-
dant had a reasonable expectation of privacy in
the place searched, that there was not probable
cause to issue the warrant, and that the warrant
did not describe the things to be seized with suffi-

* Circuit judge, sitting on the Court of Appeals by assignment.

cient particularity. In *Dezek,* the circuit judge suppressed the evidence after holding that there was no statutory authority for a warrant authorizing video surveillance and that defendant was not "forthwith" served with a copy of the warrant as required by MCL 780.655; MSA 28.1259(5). In *Thompson,* the circuit judge declined to suppress the evidence after holding that defendant had no reasonable expectation of privacy in the place searched. In *Petruska, Kelly,* and *Pletcher,* the circuit judge held that defendants had a reasonable expectation of privacy in the place searched but declined to suppress the evidence after holding that the search was conducted pursuant to a valid warrant. The people appeal of right in *Medema* and *Dezek,* while defendants appeal by leave granted in *Thompson, Petruska, Kelly,* and *Pletcher.*

# I

The initial question we must address is whether defendants had a reasonable expectation of privacy in the place searched. See *Katz v United States,* 389 US 347, 351-352; 88 S Ct 507; 19 L Ed 2d 576 (1967):

"[T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. * * * But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."

In concurrence, Justice HARLAN observed:

"[T]here is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of

privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'

\*     \*     \*

"The critical fact in this case is that '[o]ne who occupies it, [a telephone booth] shuts the door behind him, and pays the toll that permits him to place a call is surely entitled to assume' that his conversation is not being intercepted. \* \* \* The point is \* \* \* that it is a temporarily private place whose momentary occupants' expectations of freedom from intrusion are recognized as reasonable." *Id.,* 361.

Testimony revealed that the men's rest room subject to the search warrant was a large room with one door leading to the outside. Within the room were several urinals and wash basins and four toilet stalls. The stalls were constructed of solid partitions elevated from the floor approximately 8-12 inches. The partition did not extend to the ceiling, but a five-foot eleven-inch man could not peer over its top. At the front of each stall was a door of the same height as the side partitions. The doors had been designed with latches, but the latching devices were broken or missing. Persons using the stalls, including defendants, would usually use small rolls of toilet paper wedged into the door cracks to hold the doors closed. A hole had been created in the common side partition between two of the stalls. The hole was approximately six inches in diameter (as stipulated by the parties in three of the cases; the only testimony concerning the size of the hole disclosed that it was six inches in circumference). It was located about waist high. It was alleged that the illegal acts were committed by one participant placing his penis through the hole while standing in one stall and the occupant of the other stall performing fellatio upon him. Surveillance of the two stalls was accomplished by

installation of a needle-point video camera lens in the ceiling above the stalls. The lens was directly connected to a video camera situated above the ceiling panels which was connected by cables to a video tape recorder and a video monitor. The recorder and monitor were located in a room separate from the men's rest room. The audio surveillance was concentrated on the same two stalls but picked up most sound within the room. The video monitor provided continuous video and audio coverage of all activity within the two stalls. The sound was not recorded, but the video recorder was turned on by the officers when they observed through the monitor that sexual activity between males was about to occur in the stalls.

We hold that the bathroom stalls here, like the telephone booth in *Katz,* were temporarily private places whose momentary occupants' expectations of privacy are recognized by society as reasonable. See *Bielicki v Superior Court of Los Angeles County,* 57 Cal 2d 602; 21 Cal Rptr 552; 371 P2d 288 (1962), *Britt v Superior Court of Santa Clara County,* 58 Cal 2d 469; 24 Cal Rptr 849; 374 P2d 817 (1962), *Brown v State,* 3 Md App 90; 238 A2d 147 (1968), *State v Bryant,* 287 Minn 205; 177 NW2d 800 (1970), *Buchanan v State,* 471 SW2d 401 (Tex Crim App, 1971), *People v Triggs,* 8 Cal 3d 884; 106 Cal Rptr 408; 506 P2d 234 (1973), and *Kroehler v Scott,* 391 F Supp 1114 (ED Pa, 1975). See also *People v Abate,* 105 Mich App 274; 306 NW2d 476 (1981), in which, under circumstances analogous to those presented here, the Court found a toilet stall in a public rest room at a roller skating rink to be a "private place" under MCL 750.539d; MSA 28.807(4). Compare also *People v Hunt,* 77 Mich App 590; 259 NW2d 147 (1977), in which the Court expressly distinguished the instant situation while holding that defendant had

no reasonable expectation of privacy. In *Hunt,* defendant and his female companion had taken exclusive occupancy of a public rest room for over 30 minutes, during which time moans were heard through the rest room door.

Some jurisdictions, while unprepared to recognize a reasonable expectation of privacy where defendant's activities were viewed from a common area of a rest room, nevertheless have indicated that such an expectation of privacy exists under other circumstances. See *Buchannan, supra,* and *Moore v Florida,* 355 So 2d 1219 (Fla App, 1978). In this case, reliance upon the visibility of defendant's activities from the common area of the rest room or through the hole to the adjacent stall is misplaced. In *Katz, supra,* the government argued that defendant placed the telephone calls which were recorded by the police from a glass telephone booth in which defendant was visible to the public. The Court rejected that argument, noting that defendant sought to exclude intruding ears rather than intruding eyes when he entered the booth. Thus *Katz* recognized that an expectation of privacy may be partial and yet receive constitutional protection. A stall such as that at issue here obviously does not afford complete privacy, but an occupant of the stall would reasonably expect to enjoy such privacy as the design of the stall afforded.

## II

Since we hold that defendants had reasonable expectations of privacy in the place searched, and since no exigent circumstances are proffered for our consideration, the admissibility of the evidence turns on whether the district judge erred in issu-

ing a search warrant. The judge issued the warrant based on affidavits of three members of the Kalamazoo County Sheriff's Department. Relevant portions of those affidavits are reproduced below. One affidavit provided:

"(3) That the affiant was informed of men soliciting for immoral purposes and suspected homosexual activity at the US-131/ 'D' Avenue rest area, Alamo Township, County of Kalamazoo, State of Michigan.

"(4) That on October 22, 1978, the affiant was informed of an investigation to locate, indentify, and arrest persons soliciting for and involved in homosexual acts at the US-131/ 'D' Avenue rest area. That during the course of the investigation, two men were apprehended in the act of committing gross indecency and subsequently charged.

"(5) That on October 24, 1978, the affiant was part of a team of officers assigned to investigate alleged homosexual activity to include soliciting for immoral purposes and homosexual acts at the rest area on US-131 at 'D' Avenue. That upon entering the mens room the affiant observed men loitering in stalls and the mens room proper. One of the men fit the description of a male subject loitering in the mens room on October 22, 1978. That an unidentified male asked the affiant to accompany him to his car. That the same men entered the restroom on numerous occasions, returning to their cars; not starting the motors. Further, the same subjects were seen walking in the parking lot and spending hours at the rest area. That while in the mens room, a male solicited the affiant for immoral purposes and was subsequently arrested and charged in a complaint and warrant for soliciting for immoral purposes, pleading guilty to the charge in the 8th District Court on October 25, 1978."

A second affidavit provided:

"(2) That as a Shift Commander he was informed of criminal activity in the County. That he was further

informed men have been loitering in the mens room and parking areas at the US-131/ 'D' Avenue rest area, Alamo Township, Kalamazoo County. Further, there was information two men were seen leaving a stall located within the mens restroom at the rest area on October 18, 1978. Further, has received information that men have been soliciting for and involved in homosexual acts.

"(3) That on October 22, 1978, with the background information the affiant initiated an investigation into alleged homosexual activity. At approximately 10:00 date, the affiant entered the mens room at the US-131/ 'D' Avenue rest area making himself familiar with the interior of the mens room. The affiant observed a hole in the partition separating stalls #1 and #2, approximately waist high.

"(4) That while in the rest room, the affiant observed two stalls occupied and both occupant's feet facing forward. After pretending to leave the mens room, the affiant observed both sets of feet facing the hole in the partition and smacking, sucking type sounds coming from both booths. Upon investigating further he observed two males committing a homosexual act. Both subjects were subsequently arrested and warrants were authorized for gross indecency between males. Further, the affiant has observed several of the same men and vehicles at the rest area on October 22, 1978 and October 24, 1978."

The third affidavit provided:

"(2) That as part of his regular duties he is briefed on criminal activities in the County. That as part of this briefing your affiant was informed there were men loitering in the mens room at the US-131/ 'D' Avenue rest area in Alamo Township, Kalamazoo County. Further, there was information that illegal sex acts were being performed between males in the rest room.

"(3) That as part of your affiant's regular duties, he has gone out to the US-131/ 'D' Avenue rest area to determine whether there are any illegal activities going on. Your affiant has observed numerous local residents

loitering in the rest area. The residence of these persons were learned by obtaining drivers licenses from these persons. These persons were told not to loiter in or about the rest areas.

"(4) These activities were witnessed by this officer in May, 1978, while I was assigned to the 11:00 PM to 7:00 AM shift. During the month of May, 1978, there were numerous times when the same individuals were asked to leave the rest area.

"(5) Further, your affiant states that the same type of activity as listed in paragraphs #3 and #4 were witnessed while on the 11:00 PM to 7:00 AM shift in August, 1978."

In *Aguilar v Texas,* 378 US 108; 84 S Ct 1509; 12 L Ed 2d 723 (1964), the court held that affidavits supporting a search warrant may be based on hearsay information and need not reflect the direct, personal observations of the affiant but that the magistrate must be informed of some of the underlying circumstances on which the informant based his conclusions and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, was credible or that his information was accurate. See also *People v Peterson,* 63 Mich App 538; 234 NW2d 692 (1975), *People v Jerry Johnson,* 68 Mich App 697; 243 NW2d 715 (1976), and *People v Staffney,* 70 Mich App 737; 246 NW2d 364 (1976). Here, each affidavit contained statements from unidentified informants. The affidavits contained nothing concerning the basis of the informant's conclusions and nothing from which the credibility of the informant or the accuracy of the information could be inferred.

In addition to this defect in the underlying affidavits, we cannot say that the warrant limited

the search to "precise and discriminate circumstances" as required by the Court for warrants authorizing electronic surveillance in *Berger v New York,* 388 US 41, 63; 87 S Ct 1873; 18 L Ed 2d 1040 (1967). Officers acting under the color of the warrant conducted a search which extended to every occupant of the stalls during the relevant period. The stalls were kept under constant surveillance through audio and video monitors. Yet the affidavits did not indicate that every one who used the stalls was likely to engage in illicit activity.

In *People v Nieves,* 36 NY2d 396; 369 NYS2d 50; 330 NE2d 26 (1975), the court indicated that a warrant authorizing a search of "any person therein" was permissible only if the facts known to the magistrate and the reasonable inferences to be drawn therefrom created a substantial probability that the authorized invasion of privacy would be justified by discovery of the items sought from all persons present when the warrant was executed. In *State v Sims,* 75 NJ 337; 382 A2d 638 (1978), the court stated that "presence" is a descriptive fact which satisfies the intent behind the Fourth Amendment only if there is good reason to believe that anyone present at the anticipated scene would probably be a participant in the crime. Even where there is police observation of known lawbreakers operating from a given location, a warrant permitting a search of all individuals found in that location would be impermissible if that location was actually a public place. See also *People v Tenney,* 25 Cal App 3d 16; 101 Cal Rptr 419 (1972), and *Crossland v State,* 266 P2d 649 (Okla Crim App, 1954). The warrant here would not authorize the search conducted by the officers.

## III

Evidence which is the product of an illegal search is inadmissible as "fruit of the poisonous tree" unless the connection between he lawless conduct of the police and the discovery of the challenged evidence is so attenuated as to dissipate the taint. *Nardone v United States,* 308 US 338; 60 S Ct 266; 84 L Ed 307 (1939), *Wong Sun v United States,* 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963), *United States v Ceccolini,* 435 US 268; 98 S Ct 1054; 55 L Ed 2d 268 (1978). Applying this standard to the instant cases, we hold to be inadmissible video recordings of the activities in the rest room, police surveillance notes on activities observed through the monitor, and testimony of the officers as to activities observed either through the monitor or upon entry into the rest room after observations through the monitor. Defendant Petruska also argues that his confession should be suppressed. See, for example, *Wong Sun, supra,* 485-486. However, the evidence in the record here is insufficient for us to determine whether the connection between the lawless conduct of the police and defendant's confession was attenuated. We therefore decline to suppress the confession without prejudice to defendant raising this issue on remand.

In view of our resolution of the foregoing issues, we need not address the other issues raised by appellants. The decisions of the circuit court in *Medema* and *Dezek* are affirmed. The decisions of the circuit court in *Thompson, Petruska, Kelly,* and *Pletcher* are reversed, and the cases remanded for further proceedings consistent with this opinion.