PEOPLE v ABDALLA

1. EVIDENCE—APPEAL AND ERROR—PRESERVING ISSUES FOR APPEAL—
   RELEVANCY—FOUNDATION—BEST EVIDENCE.
   The issue of the relevancy of certain evidence is not preserved for
   appeal by a defendant's general objection to the evidence on
   the grounds that a proper foundation has not been laid for its
   admission and that the evidence was not the "best evidence".

2. APPEAL AND ERROR—PRESERVING ISSUES FOR APPEAL—MANIFEST
   INJUSTICE.
   The Court of Appeals will not consider an issue that is not
   properly preserved for appeal in the trial court unless the
   record affirmatively shows that a manifest injustice has occur-
   red.

3. EVIDENCE—MANIFEST INJUSTICE—EXHIBITS—FAILURE TO OBJECT—
   ABUSE OF DISCRETION—APPEAL AND ERROR.
   The test for determining whether manifest injustice occurred in
   the admission of evidence, which was not objected to by defense
   counsel, is whether or not the trial court abused its discretion.

4. CRIMINAL LAW—EVIDENCE—FOOTPRINT EVIDENCE—ADMISSIBILITY.
   Footprint evidence is admissible in a criminal trial.

5. WITNESSES—CRIMINAL LAW—APPEAL AND ERROR—EXPERT WIT-
   NESSES—FAILURE TO OBJECT.
   A defendant cannot complain of error in allowing a jury to hear
   an expert's testimony in a criminal trial where defense counsel
   failed to object to the admission of the testimony or to make a
   motion to strike the testimony and where defense counsel in
   his cross-examination of the expert and in his closing argu-
   ments emphasized the expert's qualifications and conclusions

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence §§ 448, 459.
[2, 3] 5 Am Jur 2d, Appeal and Error § 545.
[4] 21 Am Jur 2d, Criminal Law §§ 362, 368.
[5] 30 Am Jur 2d, Evidence § 1022.
   75 Am Jur 2d, Trial §§ 166, 167, 708.
[6–8] 68 Am Jur 2d, Searches and Seizures § 85.

and thereby assisted in the introduction of this information into the trial; any claim of error in the Court of Appeals under these circumstances goes to the weight of the evidence, not its admissibility.

6. SEARCHES AND SEIZURES—EXPECTATION OF PRIVACY—OPERATION— CONSENT—REMOVAL OF BULLET.

There is no expectation of privacy and therefore no search within the meaning of the Fourth Amendment where a defendant, who is a gunshot victim, and his parents, voluntarily consent to an operation for the removal of a bullet from the defendant's leg and where the bullet when recovered is delivered to a policeman who was present in the hospital and was investigating the shooting; there is no violation of the Fourth Amendment where there is no search.

7. SEARCHES AND SEIZURES—PLAIN VIEW—HOSPITAL OPERATING ROOM —REMOVAL OF BULLET—HOMICIDE.

An object that comes into the plain view of a police officer who is in a position that he has a right to be in is subject to seizure and may be admitted into evidence; a police officer, who is in a hospital in response to a call from the hospital about a gunshot victim having been admitted to the hospital, has a right to be there, and a bullet removed from the gunshot victim, once it is removed, is subject to seizure by the officer and is admissible against the gunshot victim in a subsequent trial in which he is accused of the murder of another person.

8. SEARCHES AND SEIZURES—REMOVAL OF BULLET—STAFF DOCTORS— PRIVATE PERSON—GOVERNMENTAL CAPACITY.

A doctor who was a member of a hospital's staff and was specifically requested by a defendant, who was a gunshot victim, and the defendant's parents to remove a bullet from the defendant's leg was acting strictly as a private person and the defendant's claim that the doctor was acting in a governmental capacity in conducting the operation and in delivering the bullet to a policeman who was present in the hospital and who was investigating the shooting thereby making the seizure of the bullet a violation of the Fourth Amendment must be rejected.

Appeal from Macomb, Frank E. Jeannette, J. Submitted June 8, 1976, at Detroit. (Docket No. 24796.) Decided August 23, 1976. Leave to appeal applied for.

David Abdalla was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George N. Parris,* Prosecuting Attorney, *Don L. Milbourn,* Chief Appellate Lawyer, and *Stephen F. Osinski,* Assistant Prosecuting Attorney, for the people.

*Metry, Metry & Sanom,* for defendant.

Before: J. H. GILLIS, P. J., and T. M. BURNS and W. VAN VALKENBURG,* JJ.

W. VAN VALKENBURG, J. The defendant was jury convicted of first-degree murder, MCLA 750.316; MSA 28.548, sentenced to life imprisonment, and appeals as of right.

On October 7, 1974, at about 9 p.m., John Raisanen, the deceased, and a friend were visiting in the Purple Martin gas station located at the intersection of Eight Mile Road and Ascension Street in the City of Warren. They observed two men approaching who were wearing nylon stocking masks. Raisanen, who was employed at the station, raised a wooden club in an effort to strike at them and while doing so received a fatal gunshot wound in the chest. Thereupon both of the would-be robbers retreated hurriedly from the scene.

About 30 minutes later, the defendant entered Holy Cross Hospital, located nearby, with a gunshot wound in his left thigh. The police were notified as required by MCLA 750.411; MSA 28.643.

Officers who responded to the call interviewed the defendant on the theory that he was a victim

_____
* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

and not a suspect. During the course of these conversations and at the officer's request the defendant released his clothing and boots. After returning to the station, one officer found heel prints which were similar to those that these boots might have made. Thereafter, attention focused on Mr. Abdalla as a suspect rather than a victim.

The friend of the deceased who viewed the homicide was unable to make a positive identification of the assailants at trial. Therefore, the heel prints and the bullet were of primary importance insofar as evidence was concerned. Additional facts will be discussed in relation to the issues.

We quote from page 4 of defendant's brief:

"In an attempt to link defendant with the scene of the crime, the prosecution introduced exhibits 26 through 30 into evidence. These exhibits included the boots worn by defendant when he entered Holy Cross Hospital on October 7, 1974 (26-A and 26-B), photographs of a footprint found on the grounds of the gas station (27 and 28), a photograph of an impression made with defendant's boot at the same location (29) and a photograph of defendant's boots (30)."

According to the record, the defendant's counsel, contrary to the claim set forth in his brief, did not object to the footprint evidence on relevancy grounds, but only made a general objection to the evidence and that it was secondary. He objected to improper foundation being laid by the prosecutor; the fact that these exhibits were not "best evidence" and lack of identification. Therefore, strictly speaking, the issue was not properly preserved for appeal. The rule is well established that this Court, under these circumstances, will not consider the issue unless the record affirmatively shows that a manifest injustice has occurred. *Peo-*

*ple v Snow,* 386 Mich 586, 591; 194 NW2d 314 (1972). The usual test where evidence of this type is admitted rests on whether the trial court abused its discretion. *People v Hodo,* 51 Mich App 628, 638; 215 NW2d 733 (1974).

The courts of this country, including Michigan, have repeatedly ruled footprint evidence admissible. Anno: *Footprints as Evidence,* 35 ALR2d 856 (1954); 29 Am Jur 2d, Evidence, § 377, pp 427–428; 32 CJS, Evidence, § 546, pp 121–123, 169–171, 251.

The horseshoe-like pieces of metal on the boots in question left similar prints at the scene of the crime. However, the expert could not positively state that the boots did or did not make the prints. Therefore, defendant's counsel seized upon this fact in cross-examination in order to minimize the importance thereof. Apparently, he felt that was good trial strategy as he asked the witness to repeat not only his qualifications, but his conclusions as well. Later he emphasized these points in his final summation to the jury, but never, during the course of the trial, did he object to the evidence on the basis of undue prejudice and make any motion to strike the testimony. Therefore, he assisted in the introduction of this material into the trial. When this is done, he cannot complain of error. *People v Shipp,* 34 Mich App 67, 69; 190 NW2d 750 (1971).

We hold by virtue of these authorities that the evidence was for the jury and that any objection here went to the weight of this evidence, not its admissibility.

Finally, the defendant contends that the removal of the bullet by a doctor and the subsequent taking thereof by the police amounted to an unreasonable search and seizure.

First, it should be noted that the defendant,

together with approval of his parents, voluntarily consented to the operation. If there was no search, there can be no violation of the Fourth Amendment. *People v Whalen,* 390 Mich 672, 677; 213 NW2d 116 (1973). The question must be answered as to whether or not the operation in itself constituted a search. The Supreme Court of the United States has answered this inquiry in *Katz v United States,* 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967), as quoted in *Whalen, supra,* at 677:

"Simply put, if an individual has a reasonable expectation of privacy in the area searched, or the material seized, a search has been conducted. 'What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.' *Katz, supra,* 351.

"Thus seizure of objects within the plain view of an officer, lawfully in a place where he had a right to be are not proscribed by the Constitution. *United States v Lee,* 274 US 559; 47 S Ct 746; 71 L Ed 1202 (1927)."

Once the bullet was in plain view it was subject to seizure by the police as stated in *Harris v United States,* 390 US 234, 236; 88 S Ct 992, 993; 19 L Ed 2d 1067, 1069 (1968):

"It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."

Did the defendant, upon entering the hospital, have a "reasonable expectation of privacy?" The question must be answered in the negative. He entered the hospital voluntarily and requested removal of the bullet. Certainly, it would not be reasonable to say that he intentionally hid the bullet in his thigh. *Katz v United States, supra,*

*People v Dajnowicq,* 43 Mich App 465, 468; 204 NW2d 281 (1972).

No Michigan case with similar facts has been called to our attention. However, *State v Turner,* 101 Ariz 85, 87; 416 P2d 409, 411 (1966), is almost identical in all respects. The reporting statute, ARS 13-1206, is similar. The Fourth Amendment applies there, as here. The only distinguishing feature in the facts is that the bullet was in the defendant's head rather than the thigh. We quote at length from that decision:

"The officers were acting pursuant to their duty in furtherance of their investigation when they remained in the emergency room in order to gain information as the result of the removal of the bullet. We must conclude from the fact the defendant went to the Tucson Medical Center for treatment that it was his express wish that the doctor remove the bullet if such was reasonable in the course of treatment of defendant's injury.

"Defendant contends there was an unreasonable search and seizure. We cannot agree with this contention. In order to constitute such a violation of constitutional rights there must first be a search * * * .

"Also, in the instant case no search was required and, therefore, the provisions of our federal and state constitutions are not actable. The evidence secured by the police officers was open to the eye and hand. It was unnecessary to conduct a search * * * . There was no exploratory search by the officers seeking to uncover and find any papers and effects of the appellant which were hidden or concealed from their view. Officers of the law are not required to close their eyes and ignore such illegal activities after they are lawfully on the premises." (Citations omitted)

Although the arguments were different a similar situation existed in *Green v State,* 257 Ind 244; 274 NE2d 267 (1971), which is referred to in

*Adams v State,* 260 Ind 663; 299 NE2d 834 (1973), as follows:

"It was a matter open to the public generally at the time and the defendant was conscious and did not object to the delivery of the bullet. We held that the evidence observed by the police officers, who had to be present for security reasons, was properly admissible." 260 Ind at 669.

Furthermore, the defendant asserts that the doctor was acting in a governmental capacity in conducting the operation. The facts proved otherwise. He was a member of the hospital's staff and was specifically requested by the defendant and his parents to remove the bullet. Therefore, he was acting strictly as a private person. This Court stated in *People v Langley,* 63 Mich App 339, 344, 234 NW2d 513 (1975), as follows:

"Admission of evidence obtained by a private individual, not acting under the authority of the state, is not prohibited by the US Const, Am IV, whether his actions were reasonable or not. *People v Harry James Smith,* 31 Mich App 366, 373–374; 188 NW2d 16 (1971)."

This conclusion of law is further bolstered by *LuAllen v State,* 2 Tenn Cr App 329; 453 SW2d 453, 454 (1970):

"While attempting a robbery, the petitioner was himself shot by his victim. At the hospital, his doctor gave to the sheriff the bullet he had extracted from the petitioner. This was done by a private citizen and was not a search by an official."

Following a careful analysis of the issues and the authorities in connection therewith, we find no reversible error.

Affirmed.