PEOPLE v MASTEN

Docket No. 77-3463. Submitted September 4, 1979, at Lansing.—Decided March 17, 1980.

Defendant, Jeffrey S. Masten, was convicted of attempting to procure an act of gross indecency in the Kent Circuit Court, John T. Letts, J. The evidence at trial indicated that defendant approached three police officers and offered to perform acts of fellatio for $25. When one of the officers asked him if he had a place to go, defendant replied that he did not, whereupon he was arrested. Defendant appeals. *Held:*

1. Defendant alleged that the evidence was insufficient to show the proposition of a public act of gross indecency. That is immaterial because the gross indecency statute applies to both public and private conduct.

2. Defendant also contended that the statute is unconstitutionally vague. The gross indecency statute, standing alone in the criminal statutes, fails to give adequate notice of the conduct proscribed, but the prior decisions of the courts of this state are ample to warn a defendant that attempting to procure the commission of a private act of fellatio between consenting adult males is prohibited. It penalizes conduct that is of such character that the common sense of society regards it as indecent and improper. It is not bereft of guidelines or unconstitutionally vague.

Affirmed.

BRONSON, J., dissented. He would hold that "procuring" contemplates a three-party situation and that the procuring portion of the gross indecency statute in question only prohibits one male person from obtaining or attempting to obtain the services of a second male person for the commission of an act of gross indecency with a third male person; it does not cover a two-party situation.

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 50 Am Jur 2d, Lewdness, Indecency, and Obscenity, §§ 2, 17, 18.
[2-4] 21 Am Jur 2d, Criminal Law § 17.
  73 Am Jur 2d, Statutes § 346.

Opinion of the Court

1. Criminal Law — Gross Indecency — Statutes.

    The gross indecency statute applies to both public and private conduct (MCL 750.338; MSA 28.570).

2. Criminal Law — Gross Indecency — Statutes — Vagueness.

    The gross indecency statute, standing alone in the criminal statutes, fails to give adequate notice of the conduct proscribed, but the prior decisions of the courts of this state are ample to warn a defendant that attempting to procure the commission of a private act of fellatio between consenting adult males is prohibited (MCL 750.338; MSA 28.570).

3. Criminal Law — Gross Indecency — Vagueness — Statutes.

    The gross indecency statute penalizes conduct that is of such character that the common sense of society regards it as indecent and improper; it is not bereft of guidelines or unconstitutionally vague (MCL 750.338; MSA 28.570).   :

Dissent by Bronson, J.

4. Words and Phrases — Procure — Statutes — Gross Indecency Statute.

    *Use of the term "procure" in the gross indecency statute should be construed to pertain to three-party situations only (MCL 750.338; MSA 28.570).*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *David H. Sawyer,* Prosecuting Attorney, and *Carol S. Irons,* Assistant Prosecuting Attorney, for the people.

*Buth, Wood & Weidaw* (by *George S. Buth* and *Stephen M. Tuuk),* for defendant.

Before: Danhof, C.J., and Bronson and Beasley, JJ.

Danhof, C.J. The defendant was charged with attempting to procure an act of gross indecency, MCL 750.338; MSA 28.570.[1] At his trial before the

---

[1] "Any male person who, in public or in private, commits or is a party to the commission of or procures or attempts to procure the commission by any male person of any act of gross indecency with another male person shall be guilty of a felony, punishable by

bench, the people's evidence indicated that on the evening of August 6, 1976, the defendant approached three Grand Rapids police officers in the vicinity of that city's Pantlind Hotel and offered to perform acts of fellatio for the sum of $25. One of the officers asked the defendant "if he had a place to go". The defendant replied that he did not, and was arrested without further conversation. The defendant testified that his offer was the product of threats against him by three other men, who had instructed him to bring them the money he received for "hustling". Upon conviction, a sentence of two to five years was imposed.

The defendant's first claim on appeal challenges the sufficiency of the people's evidence, arguing that the exchange between the arresting officers and himself was not adequate to show that he proposed to them the public commission of an "act of gross indecency". This contention draws its legal force from the opinion in *People v Howell*, 396 Mich 16; 238 NW2d 148 (1976), in which three justices wrote:

"[We] construe the term 'act of gross indecency' to prohibit oral and manual sexual acts committed without consent or with a person under the age of consent or any ultimate sexual act committed in public." 396 Mich 16, 24.

The defendant is correct in his assessment of the proofs. His statement to the officers that he did not have a place to go for the performance of the acts he proposed does not show an offer to perform

imprisonment in the state prison for not more than 5 years, or by a fine of not more than $2,500.00, or if such person was at the time of the said offense a sexually delinquent person, may be punishable by imprisonment in the state prison for an indeterminate term, the minimum of which shall be 1 day and the maximum of which shall be life."

them in public. However, in arguing the meaning of the evidence, both the prosecution and the defendant mistake the precedential impact of the statutory construction offered in *Howell.*

Five and perhaps all six of the justices who sat in *Howell* concurred in the greater part of that opinion, while that portion of the opinion on which the defendant relies (section II, pp 22-24) did not receive the same degree of support. Two justices withheld their concurrence from section II completely; Justice LINDEMER abandoned section II with respect to one defendant and apparently dissented from the opinion altogether as it applied to the other defendant in the case.[2] Two panels of this Court have found that *Howell's* section II announced no more than the law of that case. *People v William Clark,* 68 Mich App 48, 53, fn 1; 241 NW2d 756 (1976), *People v Jones,* 75 Mich App 261, 272, fn 5; 254 NW2d 863 (1977).[3] Without the limitations set forth in *Howell's* section II, the gross indecency statute operates by its terms to control both public and private conduct. Thus, the defendant cannot profit from the people's failure to show a proposal of a public sexual act.

The defendant's principal attack on his conviction consists of a claim that the gross indecency statute is unconstitutionally vague, insufficiently apprising potential offenders of the conduct that it

---

[2] "CAVANAGH, C.J., and WILLIAMS, J., concurred with LEVIN, J.

"The undersigned concur in this opinion with the exception of section II:

"COLEMAN and FITZGERALD, JJ.; LINDEMER, J., as to Helzer only.

"RYAN, J., took no part in the decision of this case." 396 Mich 16, 29.

[3] We observe that the compilers of the Michigan Criminal Jury Instructions have concluded that the enigmatic array of concurrences in *Howell* created section II as precedent "binding on the Court of Appeals * * * until overruled" under the rule of *Negri v Slotkin,* 397 Mich 105, 110; 244 NW2d 98 (1976). III CJI, Commentary, p 20-104.

proscribes. In this connection, *People v Howell, supra,* is of substantial import, for with the support of at least five justices it resolved a similar claim by the application of an analysis that is binding on this Court and well fitted for use in the case at bar.

The *Howell* Court utilized the "specific conduct" approach illustrated in *United States v National Dairy Products Corp,* 372 US 29; 83 S Ct 594; 9 L Ed 2d 561 (1963). That case indicates that an enactment that is too vague to disclose every case in which it might apply may properly form the basis of a prosecution for a particular act that is clearly and fairly within its meaning. The focus of this analysis is on the conduct charged rather than the precision of the legislative drafting. The possibility of indecision or unfair application at the periphery of the statute's meaning does not preclude its use when uncertainty or surprise as to a particular act does not fairly arise.[4] The *Howell* majority also approved the principles employed in *Wainwright v Stone,* 414 US 21; 94 S Ct 190; 38 L Ed 2d 179 (1973), and *Rose v Locke,* 423 US 48; 96 S Ct 243; 46 L Ed 2d 185 (1975). These cases, seeking to define what sources may supply the notice a statute affords, recognized judicial construction and comment as a logical and proper adjunct to the language of statutory enactments. *Rose* demonstrated that if the case law fairly supplies adequate warning of the statute's potential effect, the absence of a holding directly on point will not serve to relieve a defendant of his criminal liability.

---

[4] *National Dairy* held that the sale of goods below cost for the purpose of destroying competition was a potential charge adequately announced by the Robinson-Patman act, which proscribes the selling of goods at "unreasonably low prices for the purpose of destroying competition or eliminating a competitor," 15 USC 13a.

Addressing the *Howell* defendant's attacks on the gross indecency statute, the Supreme Court held that while the statute itself could not have warned the defendants that the acts charged against them (fellatio by force and with a child) were illegal, the fact that it had "long been applied" to those acts adequately forewarned them of the possible consequences.[5]

All that remains in evaluating the defendant's "fair warning" claim is the application of the *Howell* analysis to the present conviction for attempting to procure the commission of a private act of fellatio between consenting adult males.[6] We have little difficulty in determining that the decisions of this Court were ample to warn the defendant that his conduct was illegal. That the statute would be applied when prohibited sexual acts occurred in private and with the consent of the participants was announced by *People v McCaleb*, 37 Mich App 502; 195 NW2d 17 (1972) (applying the substantially identical provisions of MCL 750.338[b]; MSA 28.570[2]), and *People v Livermore*, 9 Mich App 47; 155 NW2d 711 (1967) (in which another nearly identical provision, MCL 750.338[a]; MSA 28.570[1] was applied). Acts of fellatio were said to be within the statute's reach in *People v Schmitt*, 275 Mich 575, 577-578; 267 NW 741 (1936), and *People v McCaleb, supra.* In

---

[5] The Court cited no examples of the history to which it referred. The fact that it found that citation unnecessary confirms a point that is implicit in the reasoning of *Wainwright, supra:* It is not crucial to a "fair warning" analysis that the judicial pronouncements said to give that warning be of any particular age. Both statutes and judicial opinions give notice of their contents when they are published. The "long" application noted in *Howell* simply reduced the vitality of an already inadequate constitutional attack.

[6] Because the statute does not attach any significance to the transfer of money in connection with the acts it proscribes, we conclude that the commercial aspect of the defendant's proposition to the officers has no significance.

*People v Dexter,* 6 Mich App 247; 148 NW2d 915 (1967), this statute was held to allow prosecution on a charge of attempting to induce a male adult to engage in fellatio with the male defendant in a private place.[7]

A statute may be void for vagueness if it "confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed". *People v Howell, supra,* 20, citing *Grayned v City of Rockford,* 408 US 104; 92 S Ct 2294; 33 L Ed 2d 222 (1972). It is the defendant's claim that the gross indecency statute permits that improper exercise of discretion by failing to enumerate the acts to which it applies.

In *People v Dexter, supra,* the same argument was advanced and rejected by this Court:

"Statutes of the indecent liberties or gross indecency type penalize 'conduct that is of such character that the common sense of society regards it as indecent and improper'. *People v Szymanski* (1948), 321 Mich 248, 252. The gross indecency statute is not vague or bereft of guidelines." 6 Mich App 247, 253.

The Supreme Court addressed *Dexter* and left it untouched in *Howell's* section II, *supra.* Thus, we regard *Dexter's* application of the *Szymanski* decision as controlling in the case at bar.

We cannot find it within the judicial purview to measure the "common sense of society" or to produce a "construction" of this extremely general statute so as to insulate particular classes of sexual conduct from criminal liability. Nevertheless,

---

[7] *Dexter* also implicitly held that "procuring" an act of gross indecency may occur when a defendant proposes that he and another person engage in prohibited conduct. Contrary to the defendant's assertion, the meaning of the term "procure" is not limited to situations in which one person attempts to induce an illegal act involving two or more other persons.

one aspect of *Howell's* section II cannot be ignored. The justices' removal of private consensual sexual acts from the statute's reach reflected not only their doubts as to the values of the society but a concern for constitutionally protected privacy rights as well; their proposed construction of the statute wholly avoided the necessity of confronting that issue. 396 Mich 16, 24, fn 10. The belief that private sexual conduct is not a matter of state concern is not an irrational one. However, our function here is simply to determine whether, with respect to the conduct we have seen to be affected by this legislative enactment, that concern enjoys constitutional foundation. The Supreme Court of the United States has indicated that it does not. *Doe v Commonwealth's Attorney for the City of Richmond,* 403 F Supp 1199 (ED Va, 1975), *aff'd* 425 US 901; 96 S Ct 1489; 47 L Ed 2d 751 (1976).

Affirmed.

BEASLEY, J., concurred.

BRONSON, J. *(dissenting).* I must respectfully dissent from the opinion of my colleagues. The majority opinion fails to adequately[1] address defendant's claim that the statute under which he was charged is inapplicable to the facts of his case as established at trial. Careful consideration of this issue convinces me that defendant's conviction must be reversed.

The statute under which defendant was charged and convicted reads in part:

"Any male person who, in public or in private, commits or is a party to the commission of or procures or *attempts to procure the commission by any male person of any act of gross indecency with another male person shall*

---

[1] See majority opinion, footnote 7.

*be guilty of a felony* * * *." MCL 750.338; MSA 28.570 (emphasis added).

The information specifically charged defendant under the emphasized portion of the statute. As he did in the trial court, defendant asserts on appeal that the Legislature's use of the word "procure" means that the statute contemplates a three-party situation; that is, that the intent is to punish a "male person" who obtains the services of a second "male person" for the commission of an act of gross indecency with a third "male person". He asserts that since the facts established at trial revealed only a two-party situation (or a series of two-party situations), the prosecution did not sufficiently establish its case under the statute.

The dictionary definition of "procure" is helpful to the extent that it does not absolutely rule out either possibility:

"PROCURE. To initiate a proceeding; to cause a thing to be done; to instigate; to contrive, bring about, effect, or cause. * * * To persuade, induce, prevail upon, or cause. * * * To obtain, as intoxicating liquor, for another. * * * To find or introduce;—said of a broker who obtains a customer. * * * To bring the seller and the buyer together so that the seller has an opportunity to sell. * * *." Black's Law Dictionary (4th ed), p 1373.

The definition of "procurer", however, goes further in supporting defendant's claim:

"PROCURER. One who procures for another the gratification of his lusts; a pimp; a panderer; one who solicits trade for a prostitute or lewd woman. * * * One that procures the seduction or prostitution of girls * * *." *Id.*

Similarly, the Latin *procurare* and *procuratio* means to take care of another's affairs in an agency-type relationship. In French law, a *procureur* was an attorney, in fact or at law, who acted on behalf of another. A "procuration" refers to an agency or proxy. Clearly these terms all refer to a process by which one person deals with others on behalf of a third.

The circumstances under which the word "procure" is used in other statutes concerning sex-related offenses in Michigan also supports a conclusion that use of the term implies a three-party setting. Outside of the three gross indecency statutes,[2] the Legislature chose to use the word "procure" in only two other statutes regulating sexual behavior. MCL 750.455; MSA 28.710, the pandering statute, seeks to punish "[a]ny person who shall procure a female inmate for a house of prostitution * * *". Similarly, MCL 750.456; MSA 28.711 makes it a crime for a man to place his wife in a house of prostitution, but it goes further and equally punishes one who "procures any other person to place or leave his wife in a house of prostitution * * *". Both of these statutes specifically use the word "procure" to describe a three-party situation.

There is little case law in Michigan to aid in the determination of this issue. In *People v Johnson,* 260 Mich 117, 119; 244 NW 251 (1932), the Supreme Court affirmed the conviction of a woman convicted under the pandering statute and held that "[t]he word procure, as used in the [pandering] statute, means to acquire or to get". There was no need to go further, as the pandering statute already contemplates the ultimate involve-

---

[2] MCL 750.338; MSA 28.570 (gross indecency between males), MCL 750.338a; MSA 28.570(1) (gross indecency between females), MCL 750.338b; MSA 28.570(2) (gross indecency between male and female).

ment of more than two parties. It is true that this Court has upheld a conviction for an attempt to procure an act of gross indecency under the statute in circumstances revealing only a two-party situation, but the Court did not address the applicability of the statute to such a setting, and the issue may not have been raised by the defendant. *People v Dexter,* 6 Mich App 247; 148 NW2d 915 (1967).

Reference to the text of the statute itself supports the view that when making use of the term "procure" the Legislature envisioned a three-party situation. The statute proscribes essentially two types of conduct: (1) the actual commission of an act of gross indecency (including one who is a "party to the commission"), and (2) the actual procuring or attempt to procure an act of gross indecency. If "procure" means, at the least, "to acquire or to get", *People v Johnson, supra,* then one who "procures" an act of gross indecency for himself has acquired the act for himself and, as such, has committed or been the party to the commission of the act. In short, construing the statute to be applicable to two-party transactions would make the statute redundant. Interpreting the procuring section of the statute to mean acquiring for another removes the redundancy and gives that section of the statute its own meaning.

This interpretation of the statute finds support in the Supreme Court's decision in *People v Loveday,* 390 Mich 711; 212 NW2d 708 (1973). *Loveday* involved a charge under the provisions of a statute analogous to the one under which defendant in the instant case is charged. MCL 750.338b; MSA 28.570(2) (gross indecency between male and female). It proscribes with almost identical language the same two types of conduct prohibited by the

gross indecency between males statute, described
above. The defendant in *Loveday* pled guilty to a
charge of attempted gross indecency, and was
given a maximum sentence of five years. The
Court noted that the gross indecency statute does
not separately punish the attempt to commit an
act of gross indecency and held accordingly that a
defendant convicted of such an attempt cannot be
sentenced to the five-year maximum provided by
the statute, but only to the two and one-half year
maximum allowed by the attempt statute.[3] The
prosecution argued that defendant could neverthe-
less receive the five-year maximum sentence be-
cause his acts constituted an attempt to procure
an act of gross indecency which is specifically
mentioned in the statute. The Court rejected this
position as "untenable". While the specific grounds
of rejection were that defendant had never been
charged with an attempt to procure, inherent in
the Court's decision is the fact that procuring and
committing are not the same thing. If the attempt
to procure may be punished in a greater manner
than the attempt to commit (or, presumably, the
attempt to be a party to the commission), the two
must be distinguishable, and because "procure"
means, at least, to get or to acquire, the inescapa-
ble conclusion is that in the setting of this statute
procure means to get or to acquire an act of gross
indecency other than for oneself.

The trial court took the position that an "at-
tempt to procure" was essentially the same thing
as an "attempt to solicit". This of course cannot
precisely be so, as there can be no such crime as
an attempt to solicit. *People v Richard Banks,* 51
Mich App 685; 216 NW2d 461 (1974), *lv den* 392
Mich 765 (1974). A solicitation is complete when

---

[3] MCL 750.92; MSA 28.287.

one speaks the words or makes the gestures intended to result in a sexual act. MCL 750.448; MSA 28.703. If the term procure is construed to encompass a two-party situation, then it is arguable that an "attempt to procure" is the same as a "solicitation". This observation lends additional support to the argument that the word procure applies to three-party situations. The term "solicitation" unquestionably refers to a two-party situation. Because the Legislature has decided to punish in one section of the penal code what is unquestionably a two-party transaction by using the term solicitation, and in other sections has decided to punish what is unquestionably a three-party transaction by using the term "procure", use of the term "procure" in the gross indecency statute should be construed to pertain to three-party situations. It is apparent that the ordinary use of the word "procure" in the context of sexual activity means the facilitation of sexual activity between two other individuals. See *People v Samuel Lee,* 66 Mich App 5, 8; 238 NW2d 397 (1975).

I would reverse.