PEOPLE v KALCHIK

Docket No. 85192. Submitted February 12, 1986, at Grand Rapids.
Decided May 5, 1987.

Norman H. Kalchik, originally charged with gross indecency
between males, was convicted on his plea of nolo contendere to
an amended charge of disorderly conduct, Grand Traverse
Circuit Court, William R. Brown, J. Defendant's plea was
conditioned upon his right to appeal the circuit court's denial of
a motion to quash the information and to suppress evidence.
Defendant appealed challenging the constitutionality of the
gross indecency statute, charging misconduct on the part of the
prosecutor, and challenging the validity of the search warrant
under which the video surveillance of a shopping mall public
restroom was conducted in this case.

The Court of Appeals held:

1. Convictions under the gross indecency statute are proper
even where the proscribed conduct occurs between two consent-
ing adults. The statute is not unconstitutional as applied to
defendant who is alleged to have performed fellatio on a male
who in turn masturbated defendant while both were below a
partition dividing two of the restroom stalls and could be
viewed by others from outside the stalls.

2. The Court of Appeals has, in a number of prior cases,
ruled that fellatio between two adult males in a public place is
a type of conduct proscribed by the gross indecency statute.
Thus, defendant was forewarned that the conduct in which he

REFERENCES

Am Jur 2d, Appeal and Error §§ 880, 881.

Am Jur 2d, Criminal Law §§ 14-18.

Am Jur 2d, Lewdness, Indecency and Obscenity §§ 2, 16-18.

Am Jur 2d, Searches and Seizures §§ 61-65, 67, 68.

Am Jur 2d, Sodomy §§ 3, 8, 25.

Am Jur 2d, Statutes § 346.

Supreme Court's views as to overbreadth of legislation in connec-
tion with First Amendment rights. 45 L Ed 2d 725.

What constitutes "public place" within meaning of statutes prohib-
iting commission of sexual act in public place. 96 ALR3d 692.

Criminal offense predicated upon indecent exposure. 94 ALR2d
1353.

was engaged is prohibited and may not claim that the statute is unconstitutionally vague.

3. The prosecutor made a good faith attempt in factually distinguishing this case from a prior case where the Court of Appeals held invalid a search warrant authorizing video surveillance of a public restroom. Thus, no misconduct on the part of the prosecutor occurred as a result of the charge brought against defendant.

4. A public restroom stall does not afford its occupant complete privacy, but the occupant may reasonably expect to enjoy such privacy as the design of the stall affords. To the extent that defendant's activities were performed below a partition and could be viewed by one using the common area of the restroom, defendant had no subjective expectation of privacy, and even if he did, it would be one which society would not recognize as reasonable. On the other hand, defendant had an actual, subjective, and reasonable expectation that he would not be viewed from overhead. Thus, the search conducted through the use of a videotape camera placed in the ceiling is a violation of defendant's constitutional rights only if the search warrant was invalid.

5. The affidavit submitted in support of the request for a search warrant contained statements of multiple hearsay. Statements related by the shopping mall manager to the police officer-affiant concerning complaints the manager had received from ordinary citizens regarding suspicious activity in the restroom satisfied the requirements of personal knowledge, credibility and reliability. However, there was no showing that the statements made to the manager were from reliable informants. The affidavit was therefore deficient and the search warrant invalid to the extent it authorized the video surveillance.

Reversed and remanded for further proceedings.

SHEPHERD, J., concurred separately to note that, under the circumstances of this case, i.e., where the criminal activity was between consenting adults, where the invasion of the privacy of innocent citizens was great, and where alternative methods of surveillance were available, the trial court should have quashed the information and suppressed evidence because the surveillance constituted an unreasonable interference with private activities of innocent members of the public.

1. CRIMINAL LAW — GROSS INDECENCY — CONSENT.

Convictions under the statute proscribing gross indecency between male persons are proper even where the proscribed

conduct occurs between two consenting adults (MCL 750.338; MSA 28.570).

2. CRIMINAL LAW — DUE PROCESS — STATUTES — VAGUENESS.

A criminal statute may be challenged for vagueness on three grounds: (1) it is overbroad and thereby impinges on First Amendment freedoms; (2) it does not provide fair notice of the conduct proscribed; or (3) it confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed.

3. CONSTITUTIONAL LAW — DUE PROCESS — STATUTES — VAGUENESS.

Challenges to statutes which do not involve First Amendment freedoms on the grounds of vagueness must be examined in light of the facts of the case at hand.

4. CRIMINAL LAW — GROSS INDECENCY — FELLATIO.

Fellatio between adult males in a public place is a type of conduct proscribed by the gross indecency statute (MCL 750.338; MSA 28.570).

5. APPEAL — CRIMINAL LAW — EVIDENCE — SUPPRESSION OF EVIDENCE — CLEAR ERROR.

A trial court's ruling on a motion to suppress evidence will not be reversed unless it is clearly erroneous; a ruling is clearly erroneous where the reviewing court is firmly convinced that a mistake has been made.

6. SEARCHES AND SEIZURES — SEARCH WARRANTS — PROBABLE CAUSE — AFFIDAVITS.

An affidavit offered to show probable cause why a search warrant should issue, when based on information supplied by an informant, must: (1) contain affirmative allegations that the informant spoke with personal knowledge; (2) set forth facts from which one may conclude that the informant is credible; and (3) show that the information is reliable (MCL 780.653; MSA 28.1259[3]).

7. SEARCHES AND SEIZURES — MULTIPLE HEARSAY — EVIDENCE.

Each level of multiple hearsay evidence should be subjected to a test of its credibility and reliability where it is offered to establish probable cause to justify the issuance of a search warrant.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. Foresman,* Prosecuting Attorney, and *Dennis M. LaBelle,* Assistant Prosecuting Attorney, for the people.

*Lewis & Schuknecht* (by *Michael D. Lewis*), for defendant on appeal.

Before: D. E. HOLBROOK, JR., P.J., and SHEPHERD and D. A. ROBERSON,* JJ.

D. E. HOLBROOK, JR., P.J. Defendant was charged with gross indecency between males, MCL 750.338; MSA 28.570. After extensive pretrial proceedings, defendant pled nolo contendere to disorderly conduct, MCL 750.167(1)(f); MSA 28.364(1)(f), conditioned upon his right to appeal the circuit court's denial of his motions to quash the information and to suppress certain evidence. Defendant was sentenced to one year's probation, fined $100 and ordered to pay court costs. He appeals as of right. We must reverse on the basis that the video surveillance of defendant in a public restroom stall, from overhead, was an unreasonable search.

The events out of which the original charge against defendant arose occurred on November 9, 1983. On that date, defendant engaged in homosexual activity with another male in restroom stalls in the men's restroom at Cherryland Mall in Grand Traverse County. The activity of the two men was monitored and videotaped by a video camera placed in the ceiling of the restroom pursuant to two search warrants issued on October 31, and November 2, 1983. Defendant was filmed performing fellatio on the other male after which the second male masturbated defendant. All the activity took place below the partition dividing two of the bathroom stalls.

Defendant's first claim on appeal is that the trial court erred in denying his motion to quash the information. Defendant asserts three separate

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

grounds upon which the motion should have been granted. We find all three to be without merit. First, defendant contends that the gross indecency statute, MCL 750.338; MSA 28.570, is unconstitutional as applied to private, consensual conduct. We disagree.

The gross indecency statute provides:

> Any male person who, in public or in private, commits or is a party to the commission of or procures or attempts to procure the commission by any male person of any act of gross indecency with another male person shall be guilty of a felony.

In *People v Howell*, 396 Mich 16; 238 NW2d 148 (1976), Justices KAVANAUGH and WILLIAMS concurred with Justice LEVIN's holding in Section II of the Supreme Court opinion that the gross indecency statute was not unconstitutionally vague if construed "to prohibit oral and manual sexual acts committed without consent or with a person under the age of consent or any ultimate sexual act committed in public." Justices COLEMAN and FITZGERALD, however, concurred with Justice LEVIN's opinion with the exception of Section II. Justice LINDEMER concurred with the opinion, with the exception of Section II, "as to defendant Helzer only." Justice RYAN took no part in the decision. Since Section II of *Howell* was decided by an equally divided Court it is not precedential. See *Negri v Slotkin*, 397 Mich 105, 109; 244 NW2d 98 (1976). Until the Supreme Court reaffirms Justice LEVIN's position in Section II of *Howell*, we are required to follow Michigan authority holding that convictions under the gross indecency statute are proper even where the proscribed conduct occurs between two consenting adults. *People v Dauer*, 131 Mich App 839, 841; 346 NW2d 599 (1984);

*People v Masten,* 96 Mich App 127, 132; 292 NW2d 171 (1980), rev'd on other grounds 414 Mich 16; 322 NW2d 547 (1982); *People v Jones,* 75 Mich App 261, 272, n 5; 254 NW2d 863 (1977), lv den 402 Mich 822 (1977); *People v Livermore,* 9 Mich App 47; 155 NW2d 711 (1967). Hence, the statute is not unconstitutional and the trial court's denial of defendant's motion to quash the information was proper.[1]

Second, defendant contends that the gross indecency statute is unconstitutionally vague. We disagree. A statute may be unconstitutionally vague if (1) it is overbroad and thereby impinges on First Amendment freedoms, (2) it does not provide fair notice of the conduct proscribed, or (3) it is so indefinite that it confers unstructured and unlimited discretion on the trier of fact to determine whether an offense has been committed. *Howell, supra,* p 20. See also *Woll v Attorney General,* 409 Mich 500, 533; 297 NW2d 578 (1980). Vagueness challenges which do not involve First Amendment freedoms must be examined in light of the case at hand and court decisions construing a vague statute may serve to provide a defendant with notice that the conduct he engaged in was proscribed. *Howell, supra,* pp 21-22. See also *People v Lynch,* 410 Mich 343, 352; 301 NW2d 796 (1981).

We do not find that the gross indecency statute, as applied to this defendant, is unconstitutionally vague since this state's courts have interpreted that statute to prohibit the conduct in which

[1] The trial court followed *Howell* to the extent that it denied defendant's motion on the basis that, although the activity which occurred was between two consenting adults, it occurred in a public place and therefore the conviction under the gross indecency statute was not constitutionally prohibited. We will, nevertheless, affirm the denial of the motion since the trial court reached the right result, albeit for the wrong reason. *Gilbert v Grand Trunk W R Co,* 95 Mich App 308, 313; 290 NW2d 426 (1980), lv den sub nom *Gilbert v Criswell,* 410 Mich 854 (1980).

defendant was engaged, i.e., fellatio between adult males in a public place. See *Howell, supra.* In this case, the activity took place below the partitions separating the restroom stalls and, therefore, could be observed by one in the common area of the restroom by looking under the doors which were approximately fourteen inches off the floor. Hence, the activity took place in public and was, therefore, proscribed under *Howell, Masten, Jones,* and *Livermore.* See also *People v Penn,* 70 Mich App 638; 247 NW2d 575 (1976); *People v Dexter,* 6 Mich App 247, 252-253; 148 NW2d 915 (1967).

Consequently, we conclude that defendant was forewarned that the conduct in which he was engaged is prohibited by the gross indecency statute. Therefore, we find that the statute was not unconstitutionally vague in this instance.

Third, defendant contends that the prosecutor was guilty of misconduct in charging defendant with gross indecency because the prosecutor knew that the surveillance techniques used were of questionable validity. We disagree. Apparently, the detective who initiated the investigation of the restroom activity was told by the Michigan State Police Technical Services Unit to contact the Kalamazoo prosecutor's office before the monitoring equipment was installed in the restrooms since the Kalamazoo prosecutor had previously handled a similar case. In that case, *People v Dezek,* 107 Mich App 78; 308 NW2d 652 (1981), a search warrant was issued which allowed continuous monitoring of unspecified persons in a men's restroom at a highway rest area. This Court found the search warrant invalid. The evidence obtained thereby was found inadmissible without the warrant since the defendant had a reasonable expectation of privacy in the bathroom stall. Consequently, defendant herein contends that, since the

prosecutor was aware of *Dezek,* he knew the video
surveillance of the Cherryland Mall restrooms was
invalid and, therefore, it was improper to charge
defendant based on the improper search. We dis-
agree.

We find that the prosecutor, in good faith, at-
tempted to factually distinguish *Dezek* from the
instant case on the basis that the activity at issue
herein took place in "public" while the activity in
*Dezek* took place in private (through a hole cut in
the partition dividing the bathroom stalls). Conse-
quently, no misconduct occurred as a result of the
charge brought against defendant.

Defendant's next claim on appeal is that the
circuit court erred in denying his motion to sup-
press the evidence obtained from the video surveil-
lance since the search warrant was invalid and he
had a reasonable expectation of privacy; that he
would not be viewed surreptitiously from above.
We agree. A trial court's ruling on a motion to
suppress evidence will not be reversed on appeal
unless clearly erroneous. *People v Grimmett,* 97
Mich App 212, 214; 293 NW2d 768 (1980), lv den
411 Mich 853 (1981); *People v Mackey,* 121 Mich
App 748; 329 NW2d 476 (1982). If upon review of
the record this Court does not possess a definite
and firm conviction that the trial court made a
mistake, it must affirm. *People v Burrell,* 417 Mich
439, 449; 339 NW2d 403 (1983). We find that the
trial court made a mistake in not granting defen-
dant's motion and reverse on this basis.

We must first determine whether defendant had
a reasonable expectation of privacy in the public
restroom stall under the circumstances presented
in this case. In *Katz v United States,* 389 US 347,
351-252; 88 S Ct 507; 19 L Ed 2d 576 (1967), the
United States Supreme Court noted:

[T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. . . . But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.

If defendant herein did not have a reasonable expectation of privacy, or if his expectation was unreasonable, there was no search within the meaning of the Fourth Amendment and defendant's claim is without merit. *People v Whalen,* 390 Mich 672; 213 NW2d 116 (1973); *People v Abdalla,* 70 Mich App 697; 247 NW2d 332 (1976), lv den 399 Mich 876 (1977); *People v Hunt,* 77 Mich App 590; 259 NW2d 147 (1977).

In *Dezek, supra,* p 84, this Court stated:

We hold that the bathroom stalls here, like the telephone booth in *Katz,* were temporarily private places whose momentary occupants' expectations of privacy are recognized by society as reasonable. See *Bielicki v Superior Court of Los Angeles Co,* 57 Cal 2d 602; 21 Cal Rptr 552; 371 P2d 288 (1962), *Britt v Superior Court of Santa Clara Co,* 58 Cal 2d 469; 24 Cal Rptr 849; 374 P2d 817 (1962), *Brown v State,* 3 Md App 90; 238 A2d NW2d 147 (1968), *State v Bryant,* 287 Minn 205; 177 NW2d 800 (1970), *Buchanan v State,* 471 SW2d 401 (Tex Crim App, 1971), *People v Triggs,* 8 Cal 3d 884; 106 Cal Rptr 408; 506 P2d 234 (1973), and *Kroehler v Scott,* 391 F Supp 1114 (ED Pa, 1975). See also *People v Abate,* 105 Mich App 274; 306 NW2d 476 (1981), in which, under circumstances analogous to those presented here, the Court found a toilet stall in a public rest room at a roller skating rink to be a "private place" under MCL 750.539d; MSA 28.807(4).

As noted by the *Dezek* panel, a bathroom stall,

such as at issue herein, does not afford complete privacy, but an occupant of the stall would reasonably expect to enjoy such privacy as the design of the stall afforded, i.e., to the extent that defendant's activities were performed beneath a partition and could be viewed by one using the common area of the restroom, the defendant had no subjective expectation of privacy, and, even if he did, it would not be an expectation which society would recognize as reasonable. On the other hand, defendant did have an actual, subjective expectation that he would not be viewed from overhead. We find this expectation to be a reasonable one. Here, even though defendant's expectation of privacy may be only partial, it is nevertheless entitled to constitutional protection. *Dezek, supra,* p 85.

Since defendant was entitled to a reasonable expectation of privacy and since no exigent circumstances are proffered for our consideration, the search at issue herein was a violation of defendant's constitutional rights only if it was conducted pursuant to an invalid search warrant. We find that the search warrant issued herein was invalid to the extent that it authorized the video surveillance.

The Fourth Amendment to the United States Constitution provides in part:

[N]o warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

Similarly, the Michigan Constitution states in part:

No warrant to search any place or to seize any person or things shall issue without describing

them, nor without probable cause, supported by oath or affirmation. [Const 1963, art 1, § 11.]

MCL 780.653; MSA 28.1259(3) provides the standard by which probable cause to issue a warrant is determined:

> The magistrate's finding of reasonable or probable cause shall be based upon all the facts related within the affidavit made before him. The affidavit may be based upon reliable information supplied to the complainant from a credible person, named or unnamed, so long as the affidavit contains affirmative allegations that the person spoke with personal knowledge of the matters contained therein.[2]

In *People v Sherbine,* 421 Mich 502, 509-510; 364 NW2d 658 (1984), the Supreme Court interpreted the requirements of this statute:

> The Legislature, in enacting the statutory provision, codified both requirements of the *Aguilar* decision. The statute, however, has three requirements, not two. The first is that the affidavit, when based on informant-supplied information, must contain affirmative allegations that the informant

---

[2] In *Gates v Illinois,* 462 US 213; 103 S Ct 2317; 76 L Ed 2d 527 (1983), reh den 462 US 1237 (1983), the United States Supreme Court overruled its decisions in *Aguilar v Texas,* 378 US 108; 84 S Ct 1509; 12 L Ed 2d 723 (1964), and *Spinelli v United States,* 393 US 410; 89 S Ct 584; 21 L Ed 2d 637 (1969). The latter two cases held that anonymous tips had to satisfy each of two independent requirements before they could be relied upon. First, the affidavit had to reveal the informant's basis of knowledge and second, it had to reveal the reliability of the informant or his credibility. The *Gates* Court rejected this two-pronged approach and returned to a totality-of-circumstances test, finding that "basis of knowledge," "reliability," and "credibility" were all relevant factors and that a deficiency in one factor could be compensated for by a sufficient showing in another. In *People v Sherbine,* 421 Mich 502; 364 NW2d 658 (1984), the Michigan Supreme Court declined to reach the issue of whether it would follow *Gates* or retain *Aguilar-Spinelli.* Instead, the Court found that it had to follow MCL 780.653; MSA 28.1259(3).

spoke with personal knowledge. The second is that the affidavit must set forth facts from which one may conclude that the informant is "credible." Because "credible" modifies the entire phrase "named or unnamed," the statute requires that proof of the informant's credibility must be presented in the affidavit whenever it is based on informant-supplied information. The naming of the informant is a factor to be considered in assessing credibility; however, it is not dispositive. The statute requires in every case that the credibility of the informant be shown, unlike *Aguilar,* which allows a choice between a showing of informant credibility and information reliability. The third is that the information must be shown to be reliable. The Legislature has determined that probable cause is not established until all three requirements have been satisfied.

With respect to the information upon which the surveillance of the restrooms was authorized, the warrant at issue stated:

> That affiant has been informed by Curtis Render, manager of the Cherryland Mall, that approximately 6 people in the last three months have reported to him that while in the men's public restroom they have observed either other males staring at them while using the bathroom or have observed two persons within one toilet stall and the persons being adults as opposed to a father/son usage of the facilities.

We find that this statement constitutes hearsay within hearsay. MRE 801 through 805. This Court has held that each level of hearsay must be analyzed separately to see if it meets the statute's criteria. *People v Brooks,* 101 Mich App 416, 419; 300 NW2d 582 (1980), lv den 411 Mich 940 (1981); *People v Osborn,* 122 Mich App 63, 68-70; 329 NW2d 533 (1982). The second level of hearsay in

the above-quoted statement involves mall manager Curtis Render. Here, Render had no personal knowledge of the events spoken of; instead, he had personal knowledge that the statements were made to him. We find that the personal knowledge requirement was satisfied. See *Osborn, supra,* p 70. Moreover, although it is not asserted that Render was credible, the facts that he was the mall manager and that such reports would be received by him in the course of his employment were sufficient to support a finding that he was credible. Cf. *Osborn, supra,* p 69. Finally, for these reasons it would appear that the information he provided was reliable.

However, looking at the first level of hearsay, there was no proof that the statements made to Render were reliable or were from credible informants. See *People v Tooks,* 403 Mich 568, 577; 271 NW2d 503 (1978), where the Michigan Supreme Court noted in dicta that information by an informant which was conclusory and unverified would not support a search warrant. The statements at issue, i.e., that certain citizens were stared at while using the public bathroom or that two males were observed in one stall, without more corroboration, are conclusory with respect to establishing that homosexual activity was taking place.

Information provided by ordinary citizens who had seen suspicious activity has been held to be entitled to a finding of reliability when it was detailed and corroborated by the officers' own observations. *Tooks, supra; People v Emmert,* 76 Mich App 26; 255 NW2d 757 (1977); *People v Fuller,* 106 Mich App 263, 265-266; 307 NW2d 467 (1981); *People v Whittie,* 121 Mich App 805, 811-812; 329 NW2d 497 (1982); *In re Search Warrant on 5000 Northwind Drive,* 128 Mich App 564, 565; 341 NW2d 141 (1983). However, all of these cases

are distinguishable from the within case on the basis that there was no independent corroboration of the alleged activity by the officers herein. Moreover, the citizen informants who reported the activity in the instant case did not report it directly to the officers but to the mall manager upon whose statement the warrant was issued. In *Emmert, supra,* the informants were known to and available to the examining magistrate for questioning. In *Fuller, supra,* the informants reported the information directly to the affiant police officer. In *Whittie, supra,* the citizen informant gave the police dispatcher who was the informant her name and described the events she had just observed. In *In re Search Warrant on 5000 Northwind Drive, supra,* the affiant had personally interviewed the informants and, therefore, was in a better position to judge their credibility.

In any event, these cases are pre-*Sherbine,* and essentially refused to follow *Aguilar* in citizen informant type cases since *Aguilar* was too stringent. However, in *Sherbine* our Supreme Court, declining to follow *Aguilar,* set forth the above test with respect to establishing probable cause which we feel we must follow here.

In this case, the affidavit contains no proof of the credibility of informants whose statements comprise the first level of hearsay in the affidavit. In fact, these informants were six unnamed individuals who were not interviewed by the affiant police officer, but rather complained to the affiant's informant. Our conclusion that the affidavit is deficient with respect to the second requirement of MCL 780.653; MSA 28.1259(3) and *Sherbine* necessitates a finding of invalidity with respect to the portion of the warrant authorizing the video surveillance.

Striking that portion of the warrant that has

been found to be invalid, the remainder addresses only activity with respect to destruction of property occurring inside the restroom. Hence, we find there was not sufficient information upon which to base a finding of probable cause that homosexual activity was occurring in the restroom stalls and upon which to base the authorization of the video surveillance. Consequently, we conclude that, to the extent the search warrant issued authorized the video surveillance, it was invalid. We must therefore reverse defendant's conviction. In view of our disposition of this issue, review of defendant's remaining allegations of error is rendered unnecessary.

Reversed and remanded for further proceedings.

D. A. ROBERSON, J., concurred.

SHEPHERD, J. *(concurring)*. I agree with the majority opinion in its entirety but write separately to indicate that there is another reason why the motion to quash the information and to suppress evidence should have been granted. In this case approximately twenty innocent people were not only observed by the police using the toilets but their activities were recorded on video tape. The recordings were made from a vantage point unavailable to the general public. In *Bielicki v Superior Court of Los Angeles Co,* 21 Cal Rep 552; 371 P2d 288 (1962), the owner of an amusement park authorized the police to view, from the roof, through a pipe, allegedly homosexual activities carried on in a group of pay toilets. Petitioners were arrested as the result of the police surveillance. The court held that the officers' search was unreasonable because it was conducted without probable cause. The court condemned the officers' general exploratory search, during which both the

guilty and innocent were viewed. The court also noted that the observations made by the officers could not have been made by the general public.

It is one thing for police to set up surveillance cameras in areas open to the general public; it is quite another to surreptitiously view innocent members of the general public using toilet facilities where these innocent citizens obviously had a more than reasonable expectation of privacy. The conduct of the police constituted an unreasonable interference with the most intimate private activities of innocent members of the public.

It should be noted that the illegal conduct complained of took place between the floor and the bottom of the panels separating the stalls. This area is observable by the public and had the police somehow installed cameras that would have observed nothing more than the lower portion of the stalls so that the identity of innocent users of the toilets would have been kept anonymous, my concerns would not be so great. Such police activity, if otherwise supported by probable cause, might conceivably be sustainable. Under the circumstances of this case there is no justification for using such intrusive methods of investigation.

In cases such as this courts must balance the need to prosecute criminal activity against the need to preserve the rights of innocent members of the public. While I condemn the activity of the defendant, society must forego the ability to prosecute him with the aid of videotaped evidence in exchange for preserving the right of innocent citizens to use toilet facilities without fear of being videotaped, particularly when alternative methods of surveillance were clearly available to the police. This opinion is limited to the specific facts of this case, i.e., where the criminal activity is between consenting adults, where the invasion of the pri-

vacy of innocent citizens is great, and where alternative methods of surveillance are available. Each case must be reviewed on its own merits and a change in facts might alter the balance.

On remand, if there is other untainted evidence against defendant, he may still be prosecuted.