PEOPLE v LINO

Docket No. 114967. Submitted January 16, 1991, at Lansing. Decided August 20, 1991, at 9:05 A.M. Leave to appeal sought.

> Luciano V. Lino was convicted by a jury in the Ingham Circuit Court, Peter D. Houk, J., of gross indecency. He thereafter pleaded guilty of being an habitual offender, second offense, and was sentenced to one year in the county jail. The defendant appealed, alleging that the court erred in denying his motion for a directed verdict.
>
> The Court of Appeals *held:*
>
> The term "act of gross indecency," used in the statute under which the defendant was convicted, MCL 750.338; MSA 28.570, prohibits oral and manual sexual acts committed without consent or with a person under the age of consent, or any ultimate sexual act committed in public.
>
> The court erred in denying the defendant's motion for a directed verdict, because the prosecutor presented insufficient evidence that the act that the defendant was convicted of occurred in a public place.
>
> Reversed.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Donald E. Martin,* Prosecuting Attorney, *Robert B. Ebersole,* Chief Appellate Attorney, and *Susan L. LeDuc,* Assistant Prosecuting Attorney, for the people.

*James D. Lovewell,* for the defendant on appeal.

Before: NEFF, P.J., and SHEPHERD and McDONALD, JJ.

PER CURIAM. Following a jury trial, defendant was convicted of gross indecency, MCL 750.338; MSA 28.570. He thereafter pleaded guilty of being an habitual offender, second offense, MCL 769.10;

MSA 28.1082, and was sentenced to one year in the county jail. Defendant appeals as of right. We reverse.

I

On August 23, 1988, Officer Bruce Ferguson and other officers of the Lansing Police Department were investigating complaints of prostitution. Officer Ferguson observed defendant walking along the street waving at cars driving by. He then observed defendant get into a cream-colored pickup truck. At approximately 12:30 A.M., Ferguson followed the pickup to an empty parking lot of a local restaurant, where the truck parked. The restaurant was open at the time and the parking lot was well lit. However, there was no light on inside the pickup truck.

The parking lot was enclosed by a six- to eight-foot-tall wooden fence on the north and east sides. Officer Ferguson parked his vehicle and approached the lot where the pickup was parked. The truck was parked in the northeast corner of the lot with its lights off. From behind the fence, Officer Ferguson observed defendant's head moving "in an up-and-down motion on the lap of the driver." Officer Ferguson then stood on a supporting crosspiece of the fence that was about three feet off the ground. From that vantage point, Officer Ferguson also observed the driver's exposed penis. Officer Ferguson and two other officers then approached the vehicle. When one officer identified himself, the driver started his vehicle and drove away at a high rate of speed. The driver was later apprehended.

Lansing Police Officer Clyde Smith was also working surveillance that night, and was riding alone in an unmarked police car. Officer Smith

observed the driver of the truck pick up defendant. He then followed the truck to the parking lot, got out of his vehicle, and met with Officer Ferguson, who was observing the truck. Officer Smith was also able to observe defendant performing an act of fellatio on the driver.

The driver of the truck testified that when he picked up defendant, defendant offered him sex for money. After the two arrived in the parking lot, the driver paid defendant, and defendant thereafter performed fellatio upon him. The driver testified that, when he parked in the lot, he intended that the activities in the truck would remain private.

## II

Defendant first contends that the trial court erred in denying his motion for a directed verdict on the ground that the sexual act was not committed in a public place. Defendant contends that the act of fellatio took place in an empty parking lot, in a private vehicle, where there was a reasonable expectation of privacy, and that the arresting officers were able to observe the act only by making a deliberate effort to look into the vehicle. According to defendant, a sexual act done in private does not violate the gross indecency statute.

## III

The statute under which defendant was convicted, MCL 750.338; MSA 28.570, states in pertinent part:

Any male person who, in public or in private, commits or is a party to the commission of or procures or attempts to procure the commission by any male person of any act of gross indecency with

another male person shall be guilty of a felony, punishable by imprisonment in the state prison for not more than 5 years, or by a fine of not more than $2,500.00.

This statute contains no definition of what constitutes gross indecency. However, in *People v Hicks,* 98 Mich 86, 90; 56 NW 1102 (1893), a case involving taking indecent liberties with a child, our Supreme Court stated:

> The common sense of the community, as well as the sense of decency, propriety, and morality which most people entertain, is sufficient to apply the statute to each particular case, and point out what particular conduct is rendered criminal by it.

The "common sense of society" rationale was later applied by our Supreme Court in a gross indecency case, *People v Carey,* 217 Mich 601; 187 NW 261 (1922). In *Carey,* the Court determined that the information, which alleged that the defendant had committed an act of gross indecency, informed the defendant of the crime with which he was being charged. The Court in *Carey* also determined that the information should not state the evidence to be proven or describe the particular act charged because "[t]he gross indecency of the subject forbids it." *Id.,* p 603.

The "common sense of society" rationale was also applied by this Court in *People v Dexter,* 6 Mich App 247; 148 NW2d 915 (1967). In *Dexter,* this Court, quoting from *People v Szymanski,* 321 Mich 248, 252; 32 NW2d 451 (1948), which was another case involving taking indecent liberties with a child, stated:

> Statutes of the indecent liberties or gross indecency type penalize "conduct that is of such char-

acter that the common sense of society regards it as indecent and improper." [*Dexter, supra,* p 253.]

In *People v Howell,* 396 Mich 16; 238 NW2d 148 (1976), Justice LEVIN rejected the *Hicks-Carey-Dexter* test and authored a plurality opinion that construed the term "act of gross indecency" to prohibit:

[O]ral and manual sexual acts committed without consent or with a person under the age of consent or any ultimate sexual act committed in public. [*Howell,* p 24.]

Section II of the *Howell* opinion, which contained the above definition of gross indecency, was joined by only two other justices. Accordingly, several panels of this Court have held that section II of *Howell* has no precedential value and have adhered to the *Hicks-Carey-Dexter* line of authority. See, e.g., *People v Austin,* 185 Mich App 334, 338; 460 NW2d 607 (1990); *People v Myers,* 161 Mich App 215; 409 NW2d 788 (1987); *People v Kalchik,* 160 Mich App 40, 44; 407 NW2d 627 (1987); *People v Gunnett,* 158 Mich App 420, 424; 404 NW2d 627 (1987).

However, other panels of this Court have chosen to follow *Howell.* See, e.g., *People v Lynch,* 179 Mich App 63, 66; 445 NW2d 803 (1989), and *People v Emmerich,* 175 Mich App 283; 437 NW2d 30 (1989).

In *Emmerich,* a panel of this Court found that "the *Dexter* 'common sense of society' test is an anachronism" that perpetuates the nineteenth century avoidance of the indelicacies of the subject as well as the refusal to offer a more precise definition of the conduct proscribed by the gross indecency statute. *Emmerich,* pp 286, 287-288. The Court stated:

We think the time has come to lay to rest the attitude that "the gross indecency of the subject" of the crime of gross indecency . . . forbids a more precise definition of the conduct proscribed by the statute. The *Howell* plurality's standard accomplishes that purpose. [*Emmerich,* p 288.]

For the reasons set forth in *Emmerich,* the panel of this Court in *Lynch* adopted the *Howell* definition of gross indecency, and stated:

[I]n reviewing the case law and the variety of situations which other courts have faced, we are greatly troubled by the lack of direction and guidance that the Legislature has provided in gross indecency statutes. As stated in *Emmerich,* the time has come to stop perpetuating nineteenth century avoidance of an indelicate subject in order to spare Victorian-era sensibilities. The time has come to lay to rest the attitude that the "gross indecency" of the subject of the crime of gross indecency forbids a more precise definition of the conduct proscribed. *Emmerich, supra,* p 288. The Legislature took the statute proscribing "carnal knowledge" and redefined the prohibited acts as criminal sexual conduct so as to deal with the reality of the actions for which our society would hold an individual criminally liable. The same should be done for the gross indecency statutes. [*Lynch, supra,* pp 67-68.]

We agree with the *Emmerich* and *Lynch* panels that it is time that the Legislature acted in this area. Until such time as it does, however, we are convinced that the better definition of gross indecency is that expressed in the *Howell* opinion.

Applying the *Howell* definition of gross indecency to the facts of this case, we conclude that the trial court erred in denying defendant's motion for a directed verdict. When ruling on a motion for

a directed verdict, the court must consider the
evidence presented by the prosecutor up to the
time the motion was made in the light most favor-
able to the prosecution and determine whether a
rational trier of fact could find that the essential
elements of the charged crime were proven beyond
a reasonable doubt. *People v Petrella,* 424 Mich
221; 380 NW2d 11 (1985). We agree with defendant
that the prosecutor presented insufficient evidence
that the act defendant was convicted of occurred
in a public place. His motion for a directed verdict
should have been granted.

IV

In light of our determination that defendant's
conviction must be reversed on the basis of insuffi-
cient evidence, we need not address defendant's
remaining arguments.

Reversed.